UNITED STATES of America, Plaintiff–Appellee,

v.

Joel Juan RODRIGUEZ, Defendant–Appellant.

No. 87–2697
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 5, 1988.

Hector A. Casas, Robert J. Salinas, Mercedes, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, WILLIAMS and DAVIS, Circuit Judges.

CLARK, Chief Judge:

Joel Juan Rodriguez contends that (1) the district court failed to suppress evidence acquired in violation of his Fourth Amendment rights and (2) questions asked by the district court deprived him of a fair trial. We disagree.

## I. Facts

Customs agents arrested Joel Juan Rodriguez after finding marijuana aboard a tractor-trailer rig driven by him. Rodriguez was indicted on one count of conspiring with intent to distribute a quantity of marijuana exceeding 100 kilos and on one count of possession with intent to distribute approximately 1126 pounds of marijuana. Rodriguez filed a motion to suppress the evidence on the basis that it had been seized pursuant to a warrantless search without probable cause and without his consent.

At the suppression hearing, Andreas Funk, a Customs Agent with four years of experience, testified that an anonymous caller reported to him that someone had ordered a truckload of watermelons, said that price was no object and instructed the suppliers to lightly load the front of the truck. Suspecting that the space toward the front of the truck might be used to conceal contraband, Agent Funk proceeded to the Interstate Fruit Company, the place where the caller said that the truck was being loaded. Agent Funk was able to verify that the license number provided by the caller matched the license number of a truck parked at the Interstate Fruit Company.

When the truck left the Interstate Fruit Company, Agent Funk followed it to a fruit stand. While stopped at the stand, he observed people unloading boxes from the side door of the truck's trailer. After being joined by another agent, the two agents moved to a vantage point from which they could see boxes and bundles being loaded onto the truck. Agent Funk thought that the bundles might contain marijuana because they resembled bundles used to haul marijuana in other cases he had investigated.

The two agents followed the truck when it pulled away from the fruit stand. The agents continued to maintain surveillance of the truck when it pulled off the side of the road for thirty minutes. The truck was then driven to a truck stop. Agent Funk stopped the truck shortly after it left the truck stop. At this point, a total of four

unmarked cars and four plain clothed agents were following the truck.

Rodriguez climbed out of the truck and walked toward Agent Funk. Agent Funk identified himself as a Customs Agent and asked Rodriguez if he had any identification. Rodriguez produced a driver's license. In response to a question posed by Agent Funk, Rodriguez said that he was coming from the Interstate Fruit Market. Agent Funk inquired, "Are you sure you are coming from the Interstate Fruit Market?" Rodriguez said, "Yes." Agent Funk then asked Rodriguez point-blank, "Did you stop any place else?" Rodriguez answered, "No."

Agent Funk testified that he next told Rodriguez that "we would like to look at your trailer" and that Rodriguez responded "[s]ure" and started toward the back of the truck. Agent Funk testified that he said, "Wait a minute. I would like to go in the side door." According to Agent Funk, Rodriguez replied, "Okay. No problem." Rodriguez, however, testified that he did not at any time consent to the search and that an agent had ordered him to "open the door."

When Rodriguez opened the side door, the agents found the trailer to be filled with boxes of watermelons. The agents decided to send for a dog trained to detect narcotics. While they waited, the agents moved some of the boxes to prepare a place for the dog to work. As they did so, they uncovered marijuana. At that time the agents formally arrested Rodriguez. Forty-five minutes elapsed from the time the agents stopped the truck until the time the agents found the marijuana.

The district court denied the motion to suppress, holding that there was probable cause to conduct the search, and in the alternative, reasonable suspicion to stop the vehicle followed by consent to search. A jury convicted Rodriguez of both charges contained in the indictment. Rodriguez appeals. He contends that the search violated the Fourth Amendment because the agents lacked reasonable suspicion to stop or probable cause to search and because he did not freely and voluntarily consent to the search.

## II. Search and Seizure

### A. Reasonable Articulable Suspicion

Under either a probable cause/exigency theory or a consent theory, the agents must have possessed at least a reasonable articulable suspicion that a crime had been or was about to be committed when they stopped the truck. *See, e.g., Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) ("at least articulable and reasonable suspicion that a motorist is unlicensed" or that the vehicle or occupant is otherwise subject to seizure is required to stop and check license and registration); *Terry v. Ohio,* 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877–79, 20 L.Ed.2d 889, (1968) (reasonable suspicion of criminal activity may justify an investigatory stop even though there is not probable cause to believe that a crime is being committed). The suspicion which gives rise to an investigative stop must be based on specific and articulable facts, not mere hunches. *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *United States v. Martinez,* 808 F.2d 1050, 1054 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987). Those facts must be viewed in their totality as seen and interpreted by the officer or agent's experience. *Id.; see also United States v. Gomez,* 776 F.2d 542, 546 (5th Cir.1985).

In this case, Agent Funk had a reasonable articulable suspicion that the trailer concealed contraband which justified an investigatory stop of the truck driven by Rodriguez. When law enforcement officials corroborate the details of an anonymous informant's tip, the tip can give rise to a reasonable articulable suspicion. *Gomez,* 776 F.2d at 546. Corroboration of an adequate number of innocent details may suffice. *Id.* Here, the informant told Agent Funk the location, description and license number of the truck. Agent Funk verified each of these details. The informant also told Agent Funk that the purchaser did not care about the price of the

watermelons and requested that the front of the truck be lightly loaded. These facts indicated to Agent Funk that something else would be loaded in this space. In Agent Funk's experience, it was not uncommon for contraband to be concealed on a tractor-trailer rig transporting an otherwise legitimate load.

Agent Funk observed activity when the truck stopped at the fruit stand which heightened the level of suspicion and tended to confirm the informant's statement that the front of the truck had not been packed to capacity when originally loaded. Agent Funk witnessed the unloading of boxes followed by the loading of boxes and bundles which, based on his experience, might have been marijuana. The tip concerning the unusual circumstances of the melon purchase, corroboration of several details of this tip and the observations at the fruit stand gave rise to a reasonable articulable suspicion to make an investigatory stop.[1]

### B. Probable Cause/Exigency

Law enforcement officers may search an automobile without a warrant if they have probable cause to believe that the vehicle contains contraband or evidence of a crime. *See, e.g., United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Although the initial stop of a suspect may have been justified only by reasonable articulable suspicion, "additional facts gathered from that stop may strengthen that suspicion into probable cause." *United States v. Martinez*, 808 F.2d 1050, 1055 (5th Cir.1987); *see also Adams v. Williams*, 407 U.S. 143, 147–48, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612 (1972). To determine whether probable cause exists, we must examine the "totality of the circumstances" and make "a practical, common-sense decision whether, given all the circumstances ..., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *see also United States v. De Los Santos*, 810 F.2d 1326, 1336 (5th Cir.1987). This determination must be made in light of the officer's experience. *United States v. Head*, 693 F.2d 353, 357 (5th Cir.1982).

■ The additional information uncovered by Agent Funk after stopping Rodriguez heightened the level of already existing suspicion to probable cause. Upon inquiry, Rodriguez stated that he had not made any stops after leaving the Interstate Fruit Company. While it may be possible to postulate some innocent explanation for this misstatement, under the circumstances it heightened rather than allayed suspicion. After corroborating the details of an anonymous informant's tip regarding an unusual watermelon purchase and observing the unloading and loading of the truck at the fruit stand, Rodriguez's lie coupled with Agent Funk's experience gave rise to probable cause to believe that the trailer contained contraband.

### C. Consent

Where a suspect voluntarily consents to a search of his property during a valid investigatory stop, evidence obtained during the search should not be suppressed. *United States v. Hanson*, 801 F.2d 757, 763 (5th Cir.1986). Consent must be given voluntarily and not simply in acquiescence to a claim of lawful authority. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854 (1973); *United States v. Gomez–Diaz*, 712 F.2d 949, 951 (5th Cir.1983), *cert. denied*, 464 U.S. 1051, 104 S.Ct. 731, 79 L.Ed.2d 191 (1984). Voluntariness is a question of fact to be answered in light of the totality of the circumstances and only clearly erroneous determinations may be overturned on appeal. *Schneckloth*, 412 U.S. at 248–49,

---

**1.** Rodriguez argues that the agents exceeded the scope of a permissible investigatory stop when they had the door of the truck opened and moved boxes to make room for the dog to sniff for contraband. We do not reach this question since probable cause existed prior to the opening of the side door and since Rodriguez consented to the search.

93 S.Ct. at 2058–59; *Gomez–Diaz,* 712 F.2d at 951.

█ The district judge in this case based his finding of consent entirely on the oral testimony of Funk and Rodriguez at the suppression hearing. Under these circumstances the clearly erroneous standard is particularly strong since the trial judge had the opportunity to observe the demeanor of the witnesses. According to Agent Funk, when he requested to look in the trunk Rodriguez responded, "Sure." When asked to look in the side door, Agent Funk testified that Rodriguez replied, "Okay. No problem." Funk also testified that all the agents wore plain clothes, no weapons were shown and no threats were made. Rodriguez himself testified that he opened the side door of the truck. Thus, there is credible evidence to support the district court's finding of a valid consent.

## III. Questioning by the Trial Judge

Rodriguez also contends on appeal that the trial judge frequently interrupted the trial proceedings to ask extensive and leading questions, and that this conduct deprived him of a fair trial. Rodriguez cites twenty-one instances in the record where he alleges that the court conducted improper questioning.[2]

A trial judge has wide discretion over the "'tone and tempo'" of a trial and may elicit further information from a witness if he believes it would benefit the jury. *United States v. Williams,* 809 F.2d 1072, 1087 (5th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 228, 98 L.Ed.2d 187 (1987) (*quoting United States v. Adkins,* 741 F.2d 744, 747 (5th Cir.1984)); *see also United States v. Siegel,* 587 F.2d 721, 726 (5th Cir.1979). The trial judge must use caution in questioning a witness due to the weight that his position as judge carries with a jury. *Id.* at 726. In apprising the conduct of a trial judge whose fairness is being questioned on appeal, the reviewing court will consider the record as a whole and not just the objected-to portions. *United States v. Carpenter,* 776 F.2d 1291, 1294 (5th Cir. 1985).

█ In the context of the trial record, the court's questions in this case do not appear improper. The questions represented isolated interjections for the purposes of clarifying testimony already given and eliciting helpful information.[3] The trial judge's questions were unbiased and were neither accusatory nor argumentative. *See*

2. Mr. Jack L. Wolfe represented the United States at trial. The following is illustrative of the type of questioning by the court to which Rodriguez objects.

MR. WOLFE: Who was the driver and who did you observe get out of that rig—excuse me, get out of the tractor and go to the fruit stand?

MR. FUNK: Well, at that time I didn't know who it was, but later on it developed to be Mr. Rodriguez.

MR. WOLFE: Were you able to recognize him at that time? Could you see his face?

AGENT FUNK: You could see—

THE COURT: You didn't know his name, but it was the same individual you later have known to be Mr. Rodriguez, is that right?

AGENT FUNK: It was the same individual I know as Mr. Rodriguez.

MR. WOLFE: Could you see him at that time?

AGENT FUNK: Yes, sir.

MR. WOLFE: How far away were you?

AGENT FUNK: My measurement, I'm calling it about 300 yards. Maybe a little less. Maybe a little more.

MR. WOLFE: Explain to this jury and to the Court how from 300 yards away you were able to tell who got out of the truck?

AGENT FUNK: There was still twilight and a little bit of ambient light left, and I was using binoculars.

MR. WOLFE: Do you remember what—the person you identified as the person who got out of the truck and tractor, is that person present in the courtroom today?

AGENT FUNK: Yes, sir, he is.

3. MR. WOLFE: Who took the photograph marked as Government Exhibit No. 10?

AGENT LEBLANC: I did, sir.

MR. WOLFE: When and where did you take Government Exhbit No. 10?

AGENT LEBLANC: It was after midnight, after the defendant had been arrested and taken down to the port of Hidalgo.

MR. WOLFE: And is the defendant wearing the same clothes in Government Exhibit No. 10 as he had on earlier when you observed him at Wilman's Fruit Market?

AGENT LEBLANC: Yes, sir.

THE COURT: Your testimony is that you took that picture?

AGENT LEBLANC: Yes, sir.

*United States v. Adkins,* 741 F.2d 744, 747–48 (5th Cir.1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2113, 85 L.Ed.2d 478 (1985). We hold that the questions asked by the trial neither prejudiced Rodriguez nor prevented a fair trial.

### IV. Conclusion

Because there was reasonable articulable suspicion to make an investigatory stop followed by both probable cause and consent to search, the district court properly denied the motion to suppress. The questions interjected by the district court did not deprive Rodriguez of a fair trial. The judgment appealed from is

AFFIRMED.