UNITED STATES of America,
Plaintiff–Appellee,

v.

Johnny Michael SUTTON,
Defendant–Appellant.

No. 87–1954
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 1, 1988.

Ricardo D. Gonzalez, Walter L. Boyaki, Miranda & Boyaki, El Paso, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., LeRoy Morgan Jahn, Michael R. Hardy, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge,
JOHNSON and JOLLY, Circuit Judges.

CLARK, Chief Judge:

Johnny Michael Sutton appeals the district court's denial of his motion to suppress evidence seized from his car at the Sierra Blanca checkpoint. Finding that Sutton consented to the search by a United States Border Patrol agent, we affirm.

## I.

Johnny Michael Sutton was indicted and convicted in a bench trial in the Western District of Texas of possession with the intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) (1981). The facts leading up to his conviction are as follows.

Sutton was driving east on Interstate–10 when he reached the permanent immigration checkpoint at Sierra Blanca, Texas. Felix Chavez, an agent of the United States Border Patrol, was assigned to check the traffic as it stopped at the checkpoint. When Sutton approached the checkpoint, he stopped a couple of yards past the signs where the agent stood, an action which, according to Chavez, was atypical.

Chavez approached the window of Sutton's car to question him, and he observed that Sutton's face appeared flushed and he was breathing heavily. Sutton also appeared to be leaning away from Chavez and appeared nervous. The agent then asked Sutton if he was a United States citizen. Sutton replied affirmatively. Chavez, upon smelling no odor of alcohol, suspected that Sutton was intoxicated on some sort of drug. He asked Sutton where he was coming from and what was in the trunk of the car. Sutton replied that he had started in California and that he had some personal items in the trunk.

Chavez then asked Sutton if he would mind opening the trunk of the vehicle, to which Sutton replied "no problem." Sutton then got out of the vehicle and walked to the trunk with what appeared to be an unsteady gait, seeming to support himself by putting his hand on the car. Sutton then had some difficulty opening the trunk. In the trunk, in plain view, was a partially opened boot box with what appeared to be a pair of boots inside. Chavez asked Sut-

ton who owned the belongings in the trunk. Sutton replied that he had just purchased the boots in El Paso. The agent testified that at this point Sutton appeared to become considerably more nervous and attempted to close the box.

Chavez asked Sutton if he would mind if Chavez looked inside the box. Sutton replied, "Sure." Sutton then opened the boot box and Chavez felt something inside the boots. When he asked what was inside the boots, Sutton hesitated, and said he did not know. When asked again he said "boot stuff." Chavez then pulled the "boot stuff" from the boot and found it to be a plastic bag containing white powder, which later was determined to be methamphetamine, a Schedule II controlled substance. Chavez advised Sutton of his *Miranda* rights and ascertained that he understood them. He took Sutton into the checkpoint trailer and completed the search of the vehicle. In the trunk were three separate bags of the drug, one in each boot and the third in a separate paper bag. In addition, a small bag, wrapped in a dollar bill and containing more of the drug, was found in the inside air conditioning vent of the car. In the trailer, Sutton said the powder was "crank" and that he had taken some the night before. He also said that he had put the bags in the boots he had purchased in El Paso.

Sutton entered a plea of not guilty to the possession charge and moved to suppress the drugs on grounds that Chavez lacked probable cause to search his car. The court denied Sutton's motion finding that Agent Chavez had probable cause to believe Sutton was under the influence of a narcotic and that Sutton had consented to the search. Sutton appeals the denial of his motion to suppress. We affirm.

## II.

Sutton argues that Chavez lacked probable cause to search his car or the boot box because his actions at the stop would not lead a reasonably prudent person to conclude that items connected with criminal activity would be found in his car. *See*

*Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2333, 76 L.Ed.2d 527 (1983); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 286, 69 L.Ed. 543 (1925). Sutton contends that his consent was not valid because it was not knowing and voluntary and was obtained as a result of illegal detention. Any consent he may have given, he asserts, is nothing more than the result of acquiescence to the apparent authority of the agent. He argues that the circumstances under which his consent was obtained, i.e. that he was under illegal detention, was not informed of his right to refuse consent, was given no *Miranda* warnings and was seemingly under the custody of an armed, uniformed agent at an isolated highway checkpoint, negates any voluntariness in his consent.

This court, in *United States v. Jackson*, 825 F.2d 853 (5th Cir.1987) (en banc), *cert. denied sub nom. Ryan v. United States*, —— U.S. ——, 108 S.Ct. 711, 98 L.Ed.2d 661 (1988), held that plenary searches conducted at the Sierra Blanca checkpoint were per se unreasonable and that future warrantless searches of automobiles would be reasonable only if based upon probable cause or consent. *Jackson*, 825 F.2d at 854; *see also United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623 (1975). Consent and probable cause are alternative grounds justifying warrantless vehicle searches. *See United States v. Petty*, 601 F.2d 883, 890 (5th Cir.1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1649, 64 L.Ed.2d 237 (1980). If either ground existed prior to the search, the search was valid and proof of the other ground is not required.

■ Whether consent to search is voluntary is a question of fact to be determined from all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973); *United States v. Gomez–Diaz*, 712 F.2d 949, 951 (5th Cir.1983), *cert. denied*, 464 U.S. 1051, 104 S.Ct. 731, 79 L.Ed.2d 191 (1984). Such a finding of voluntariness may be overturned on appeal only if clearly erroneous. *United States v. Rodriguez*, 835 F.2d 1090, 1093 (5th Cir.1988). An appellate court will disturb the lower court's findings under this standard only if left with the "definite and firm conviction that a mistake has been committed." *Campos v. City of Baytown*, 840 F.2d 1240, 1243 (5th Cir.1988). The circumstances in this case indicate that Sutton knowingly and voluntarily consented to the search.

Sutton was stopped briefly and legitimately at a permanent checkpoint by Agent Chavez. The Supreme Court has validated "stops for brief questioning routinely conducted at permanent checkpoints [as being] consistent with the Fourth Amendment...." *United States v. Martinez–Fuete*, 428 U.S. 543, 96 S.Ct. 3074, 3087, 49 L.Ed.2d 1116 (1976). Not only was the stop regular and the questioning routine, but the scope of Chavez's questioning was permissible. In defining the permissible scope of questioning at checkpoints, this court has remarked that "[c]heckpoint agents may stop and query motorists about their citizenship ..." and may "selectively refer motorists to secondary inspection areas for additional questioning without articulating any reason for doing so." *Jackson*, 825 F.2d at 862.

■ During questioning, Sutton was not under any form of physical restraint or coercion. He was not threatened and no weapon was brandished. The giving of *Miranda* warnings prior to such a search is not required, *United States v. Garcia*, 496 F.2d 670, 674 (5th Cir.1974), *cert. denied*, 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975), nor did he have to be told that he had the right to refuse to consent. *Id.* at 673; *United States v. Gonzales*, 842 F.2d 748, 755 (5th Cir.1988). "Proof of knowledge of the right to refuse consent is not required to show voluntariness." *United States v. Davis*, 749 F.2d 292, 296 (5th Cir.1985). No deception was employed by the Agent Chavez to elicit Sutton's consent. The actions and speech about Chavez were directed to the business at hand—checkpoint surveillance of automobile traffic near the border. Under these circumstances there is nothing to indicate that Sutton's will was overborne. *See Davis*, 749 F.2d at

295. He voluntarily consented to the search of his trunk and boot box.

The trial court looked at the totality of the circumstances and found that Sutton's consent was voluntary. Where the judge bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the judge had the opportunity to observe the demeanor of the witnesses. *Rodriguez*, 835 F.2d at 1094. Sutton's testimony, given for the limited purpose of the suppression hearing, was also subject to the trial court's evaluation of demeanor, character, credibility, and intelligence.

While mere acquiescence may not be substituted for free consent, *Gonzales*, 842 F.2d at 754, there is nothing in this record to indicate that, under the totality of the circumstances, the trial court's finding of voluntariness was clearly erroneous. Sutton's voluntary consent to the search makes it unnecessary for us to reach the question of whether Agent Chavez had probable cause to search.

### III.

For the foregoing reasons, the decision of the district court is

AFFIRMED.