981 F.2d 1252
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Ralph Gregory COLEMAN, Defendant-Appellant.
 No. 92-5307.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: November 6, 1992
Decided: December 21, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Chief District Judge. (CR-90-258-A)
 Alan H. Yamamoto, Alexandria, Virginia, for Appellant.
 Richard Cullen, United States Attorney, Philip Urofsky, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 Affirmed.
 Before HALL, MURNAGHAN, and WILKINS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Following a bench trial, Ralph Gregory Coleman was convicted of possession with intent to distribute more than fifty grams of "crack" cocaine. Coleman appeals his conviction, contending that the narcotics should have been suppressed, he was insane at the time of the offense, and he was not competent to stand trial. We find his claims are without merit; consequently, we affirm.
 
 
 2
 In July 1990, Ralph Gregory Coleman arrived at Washington National Airport on a flight from New York City. He was arrested at the airport by Officer Douglas A. Crooke, on assignment with the Drug Enforcement Administration's Mass Transportation Detail. Coleman and Crooke have different versions of the facts leading to the arrest.
 
 
 3
 At a hearing on Coleman's motion to suppress the fruits of the search leading to the arrest, Crooke testified that, after deplaning, Coleman moved slowly through the lounge area, looking around, and Crooke noticed a large bulge in Coleman's pants. Crooke and another officer followed Coleman through the terminal. As Coleman neared the terminal exit, Crooke approached him, identified himself as a policeman, and asked to speak with him. Coleman assented and, in response to Crooke's questioning, said that he had arrived on the flight from New York and planned to visit Washington for a few days. He could not produce his airline ticket and did not bring any clothes with him. Crooke then asked Coleman if he was carrying any drugs; Coleman said that he was not. According to Crooke, he then asked Coleman if he could search him for drugs and Coleman consented.
 
 
 4
 Crooke was the only officer present when Coleman consented to be searched; however, two other officers were standing in the terminal. Coleman turned his back to Crooke and raised his arms, a position Crooke said many individuals take to make it more difficult for an officer to search certain areas. Crooke reached around to the area he had seen the bulge and felt a very hard, large lump he suspected contained contraband. When Crooke asked Coleman to identify the lump, Coleman's demeanor changed. He began to look frightened and would not answer. Crooke placed Coleman under arrest. Until that point, Crooke said Coleman was not restrained or otherwise prevented from leaving. After arresting Coleman, Crooke reached inside Coleman's pants and pulled out a bag containing crack cocaine.
 
 
 5
 Coleman's version of the facts differ materially from Crooke's. He claims that Crooke did not ask permission to search him and that he did not consent to a search. He also said that he turned to leave, but the other officers blocked his path and Crooke refused to let him leave. Coleman stated he let the officers search him because he thought he had no alternative.
 
 
 6
 Coleman filed a motion to suppress the crack cocaine. After a suppression hearing at which Crooke and Coleman testified, the district court found that the encounter and search were consensual and denied the motion. The court noted that Crooke's testimony was credible and that Coleman's was not.
 
 
 7
 On the day Coleman was scheduled for trial, the court observed that he "exhibited trembling, lack of knowledge as to whether he was in a jail or a courtroom, disorientation, and irrational behavior." Granting defense counsel's oral motion for a mental examination, the district court declared a mistrial and committed Coleman to the Federal Correctional Institution in Butner, North Carolina ("FCI Butner") for a determination of his mental competency to stand trial and to determine if he was insane at the time of the offense. Dr. Steyaert, a licensed psychologist and Chief of Psychological Services at the Federal Correctional Institution in Milan, Michigan ("FCI Milan"), examined Coleman on August 27-31, 1990, and September 4, 1990, and concluded that Coleman "presently suffer[s] from a mental illness or defect such that he would be unable to adequately understand the legal proceedings, or assist his attorney in preparing a rational defense." Dr. Steyaert also found that, "barring overwhelming testimony from more proximal witnesses, Mr. Coleman was suffering from a significant mental disease or defect that prevented him from appreciating the nature and quality or wrongfulness of his acts, at the time of the alleged offense." Based on this report, the district court found that Coleman was not competent for trial and ordered, on the Government's motion, that he be re-evaluated.
 
 
 8
 Coleman was re-evaluated at FCI Butner by, among others, a clinical psychologist and a staff psychiatrist. The team observed Coleman for several months and in May 1991 concluded that he was competent to stand trial, but did not opine whether Coleman was insane at the time of the offense. Pursuant to a court order, Coleman later was evaluated at FCI Butner to determine whether he was insane at the time of the offense. After considering their earlier analysis of Coleman, their current evaluation, the FCI Milan report, and the official account of Coleman's arrest, the psychologist and psychiatrist found "no evidence to believe that Mr. Coleman was unable to appreciate the nature, quality, or wrongfulness of his actions at the time of the alleged offense due to a mental disease or defect. Therefore, [they] view[ed] him as criminally responsible."
 
 
 9
 After observing Coleman trembling and seemingly disoriented at his next court appearance, the district court ordered a different psychiatrist to examine Coleman to determine whether he was competent to stand trial and whether he was insane at the time of the offense. This psychiatrist reviewed the findings from FCI Milan and FCI Butner, conducted an hour-long interview with Coleman, spoke with defense counsel and the assistant United States Attorney, and concluded that Coleman was "fully competent to stand trial ... [and] was not suffering from any mental disease or disorder that impaired his ability to recognize the wrongfulness of his actions, if committed by him, or to conform his behavior to the requirements of the law."
 
 
 10
 The district court determined that Coleman was competent to stand trial. At a bench trial on stipulated facts, the court found that Coleman had failed to prove that he was insane at the time of his offense and found him guilty of possession of crack cocaine with intent to distribute. Coleman was sentenced to 121 months in prison and a five-year term of supervised release. Coleman timely appealed.
 
 
 11
 I.Admissibility of Evidence Seized From Coleman's Person
 
 
 12
 Coleman contends that the district court erred by finding that the crack cocaine seized by Crooke was admissible. The district court found the cocaine admissible on the grounds that Coleman consented to the encounter and search which revealed the contraband.
 
 
 13
 "In reviewing a district court's determination on consent, an appellate court must uphold the lower court's finding unless it is 'clearly erroneous.' " United States v. Wilson, 895 F.2d 168, 172 (4th Cir. 1990) (quoting United States v. Mendenhall, 446 U.S. 544, 558 (1980)). The district court heard both Coleman's and Crooke's versions of the incident at National Airport, observed their demeanor, and determined that Crooke was more credible. Under such circumstances, the clearly erroneous standard is "particularly strong." Wilson, 895 F.2d at 172 (quoting United States v. Sutton, 850 F.2d 1083, 1086 (5th Cir. 1988)).
 
 
 14
 Crooke testified that when he asked Coleman if he could search him, Coleman said yes, raised his arms and turned around. Crooke did not threaten Coleman or display any weapons and conducted the search in public. The district court's conclusion that Coleman consented to the search was not clearly erroneous. See Wilson, 895 F.2d at 169-72.
 
 
 15
 Coleman also argues that his consent was coerced because he was "seized" within the meaning of the Fourth Amendment at the time he was searched. The Fourth Amendment is not implicated when the police simply approach a person in a public place and ask him to answer some questions. Florida v. Bostick, 111 S. Ct. 2382, 2386 (1991); Florida v. Royer, 460 U.S. 491, 497 (1983). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." Mendenhall, 446 U.S. at 554 (plurality opinion). Examples of circumstances which might indicate a seizure include the display of weapons or physical touching, the "threatening presence of several officers," or the use of language or a tone of voice that indicates that compliance is required. Id. The district court's finding that there was no seizure is reviewed on appeal under the clearly erroneous standard. United States v. Gordon, 895 F.2d 932, 937 (4th Cir.), cert. denied, 59 U.S.L.W. 3247 (U.S. 1990).
 
 
 16
 According to Crooke, no weapons were displayed and no one physically touched Coleman until he agreed to be searched. Furthermore, although two other officers were within view, the nearest one was at least ten feet away. Finally, although Coleman claimed that Crooke used threatening language, the district court discounted Coleman's testimony. Under these circumstances, the district court's findings that Coleman was not seized and that the encounter was consensual were not clearly erroneous. Therefore, the crack cocaine properly was admitted into evidence.
 
 
 17
 II.Competency at the Time of the Offense and at Trial
 
 
 18
 Coleman contends that the district court erred by finding that he was sane at the time of the offense and competent to stand trial. The district court's competency to stand trial finding may not be set aside on appeal unless it is clearly arbitrary or unwarranted. Hall v. United States, 410 F.2d 653, 658 (4th Cir.), cert. denied, 396 U.S. 970 (1969).
 
 
 19
 A criminal defendant may assert as an affirmative defense that at the time of the offense he "was unable to appreciate the nature and quality or the wrongfulness of his acts" due to a severe mental disease or defect. 18 U.S.C. § 17(a) (1988). The defendant bears the burden of proof for this defense by clear and convincing evidence. 18 U.S.C. § 17(b) (1988). The district court's finding on this issue is one of fact subject to the clearly erroneous standard of review. See United States v. Freeman, 804 F.2d 1574, 1577 (11th Cir. 1986).
 
 
 20
 There were three evaluations of Coleman's mental condition at the time of the offense. The FCI Milan report concluded that he was insane at the time of the offense, whereas the other two reports concluded that he was sane. In light of the two later reports which contradict the FCI Milan report, the district court's finding that Coleman failed to meet the burden of proof that he was insane at the time of the offense is not clearly erroneous.
 
 
 21
 Similarly, Coleman underwent three separate evaluations to determine his competency to stand trial. The psychologist from FCI Milan concluded that Coleman was not competent to stand trial, but the two later evaluations conducted by two psychiatrists and a psychologist concluded that he was competent. In light of these reports, the district court's finding that Coleman was competent to stand trial was not clearly arbitrary or unwarranted.
 
 Conclusion
 
 22
 Because the district court did not err by finding admissible the fruits of Crooke's search of Coleman, and that Coleman was sane at the time of the offense and was competent to stand trial, we affirm Coleman's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED