28 F.3d 108
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert E. BEDFORD, Defendant-Appellant.
 No. 93-10145.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 13, 1994.
Decided June 13, 1994.
 
 1
 Before: FLETCHER and TROTT, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Robert Bedford appeals his conviction of possession of at least 100 kilograms of marijuana with intent to distribute, 21 U.S.C. Secs. 841(a)(1), (b)(1)(B)(vii). The district court denied Bedford's motion to suppress the fruits of the investigatory stop which ultimately led to his conviction. Bedford appeals, arguing that law enforcement officers did not have the requisite "reasonable suspicion" to justify stopping him. We affirm.
 
 FACTS
 I. Pre-Stop Facts
 
 4
 On July 6, 1992, DEA Special Agent Michael J. Ferguson received an anonymous telephone call from a male "tipster." The tipster claimed to know two persons, "Bob Bedford" and "David Sullivan," who were distributing large amounts of marijuana. The tipster stated that Bedford was 5'9" tall, heavy-set, and in his forties. He said that Bedford lived in Scottsdale, Arizona, near Shea and Cactus roads, and that Bedford's phone number was 483-7591. The tipster further stated that Sullivan lived in Tucson, and that his number was 325-5008.
 
 
 5
 In the next few days, according to the tipster, Bedford would drive his motor home to Tucson, meet Sullivan, load 300-500 lbs. of marijuana into the vehicle, and ultimately drive the marijuana to Virginia. The tipster, in describing the motor home, said he could remember only the color tan on it, and indicated he thought it was a Ford. In response to Agent Ferguson's question, the tipster claimed to be making the call because he and a friend of his in Virginia did not like Bedford.
 
 
 6
 Ferguson checked the phone numbers and found that 483-7591 was listed to Robert Bedford, of 6701 East Paradise Drive, Scottsdale, Arizona. Ferguson verified that the address was indeed in the vicinity of Shea and Cactus roads. Ferguson also found that the other phone number was listed to Marsha Willy, of 5102 East Fort Lowell Road, Tucson Arizona.[1] Ferguson then drove to 6701 East Paradise Drive, and observed a white motor home with tan trim parked in the driveway, along with a silver Mercury station wagon. As the motor home's license plate was not visible, Ferguson ran a check on the Mercury's plate, and discovered it was registered to Robert Bedford, who had an Arizona driver's license. Bedford's license identified him as a forty-five year old male, 5'10"' in height, and weighing 190. Ferguson also checked Bedford's police record, and found he had twice been arrested for marijuana related offenses, in 1975 and 1977.
 
 
 7
 On the basis of this information, DEA agents began "spot" surveillance on Bedford's home, and also had a Tucson DEA agent do a "drive by" surveillance of 5102 East Fort Lowell Road. The surveillance revealed:
 
 
 8
 July 7 5:45 pm: Motor home no longer in Bedford's driveway
 
 
 9
 10:00 pm: Motor home not in Bedford's driveway
 
 11:30 pm: No motor home at Tucson address
 
 10
 July 8 8:10 am: No motor home in Bedford's driveway
 
 8:30 am: No motor home at Tucson address
 
 11
 5:00 pm: Motor home parked in Bedford's driveway
 
 
 12
 When the motor home was noticed back in Bedford's driveway, DEA agents began a continuous surveillance of his home. At 9:10 am on July 9, a man fitting Bedford's description emerged from the house and appeared to be inspecting the outside of the motor home and checking that its external lights were functioning. A few minutes later, a woman and two children emerged from the house. The man hugged the two children and hugged the woman three times, got in the motor home, exchanged goodbye waves, and departed. The time was approximately 9:25 am.
 
 
 13
 Once on the road, the driver stopped briefly at the Scottsdale Lock and Safe Shop, bought gas at a Chevron station, and entered highway I-17 heading North. The agents could now see that the motor home had a Virginia license plate; a computer check revealed that the license was registered to Robert and Robin Bedford of Burke, Virginia. North of the city, about 130 miles south of the point where I-17 intersects a major east-west route, I-40, the DEA and local police stopped the motor home.
 
 II. Post-Stop Facts and Procedural History
 
 14
 Bedford gave the agents a Virginia driver's license, and denied having an Arizona license. He claimed to have been staying with friends in Tempe and Scottsdale. He denied having a residence or family in Arizona. He similarly denied having any drugs in the motor home. When an agent told the man he wanted to frisk him, having noticed a "bulge" in his pocket, the man reached into his pocket, pulled out a white substance, and put it into his mouth. When an agent tried to stop him, he struck the agent and fled. He was apprehended and placed under arrest. Shortly thereafter, a narcotics detection dog, "Rudy," alerted to drugs in the rear exterior storage area of the motor home.
 
 
 15
 The motor home was then taken back to Phoenix and searched. Agents found about 432 pounds of marijuana in a specially designed compartment, behind a false wall in the closet of the motor home. Cocaine residue was recovered from Bedford's mouth.
 
 
 16
 Bedford was charged with possession of at least 100 kilograms of marijuana with intent to distribute, possession of cocaine, and assault of a federal officer. He successfully moved to sever the cocaine and assault charges from the marijuana offense. His motion to suppress all evidence on the grounds that the initial investigatory stop was not based on the requisite reasonable suspicion was denied. The district court found that the anonymous tip was sufficiently corroborated by the DEA agents' observations and research prior to the stop. Order of Nov. 13, 1992, at 2-3. Bedford entered into a plea agreement under which he pled guilty to the marijuana charge, and the other charges were dismissed. He reserved the right to appeal the district court's denial of his motion to suppress. He was sentenced to the statutory minimum prison term of 60 months.
 
 DISCUSSION
 
 17
 In Terry v. Ohio, 392 U.S. 1 (1968), the U.S. Supreme Court held that police could conduct a brief, investigatory stop based upon evidence not rising to the level of probable cause. See also Wilson v. Porter, 361 F.2d 412, 415 (9th Cir.1966) (in order to effect a "brief detention of citizens under circumstances not justifying an arrest, for purposes of limited inquiry in the course of routine police investigations.... [a] founded suspicion is all that is necessary"). In evaluating an investigatory stop, we look at the totality of the circumstances and determine "whether the detaining officers had a particularized objective basis for suspecting the particular person of criminal activity." United States v. Alvarez, 899 F.2d 833, 836 (9th Cir.1990) (citing United States v. Cortez, 449 U.S. 411, 417-418 (1981)), cert. denied, 498 U.S. 1024 (1991). This is a mixed issue of law and fact, which we review de novo. Id.
 
 
 18
 Here, the cornerstone of the DEA's suspicion was the anonymous tip. The Supreme Court has held in no uncertain terms that an anonymous tip, standing alone, "would not 'warrant a man of reasonable caution in the belief' that [a stop] was appropriate." Alabama v. White, 496 U.S. 325, 329 (1990) (quoting Terry, 392 U.S. at 22). If, however, an anonymous tip is corroborated, even in details which do not themselves suggest criminal activity, then it may constitute the requisite reasonable suspicion. Id. at 329-31; Alvarez, 899 F.2d at 837 (" '[w]hen law enforcement officials corroborate the details of an anonymous informant's tip, the tip can give rise to a reasonable articulable suspicion' ") (quoting United States v. Rodriquez, 835 F.2d 1090, 1092 (5th Cir.1988)).
 
 
 19
 The tip in Bedford's case was corroborated by the following facts:
 
 
 20
 1. The tip sufficiently described Bedford, his residence, and his motor home.
 
 
 21
 2. The motor home was gone from Bedford's house during the time the tipster said it would be in Tucson, loading drugs.
 
 
 22
 3. Bedford had a prior record of marijuana-related arrests.[2]
 
 
 23
 4. Bedford appeared to be inspecting the motor home and saying goodbye to his family, as if in preparation for a long trip.
 
 
 24
 5. Bedford drove a route consistent with a final destination of Virginia, and his motor home was registered in Virginia.
 
 
 25
 This degree of corroboration rises to the level found sufficient in White and Alvarez. Bedford's case is similar to White, where it was found sufficient that the police corroborated the tipster's description of the defendant's person, vehicle, and destination. And in Alvarez, it was sufficient that police verified the tipster's description of defendant and his car, as well as its presence at the Bank.
 
 
 26
 Bedford points to the fact that there was absolutely no corroboration for the tipster's claims about "Sullivan" and the alleged Tucson pick-up of 300-500 pounds of marijuana. He also claims the tipster did not accurately describe Bedford's motor home. Finally, he claims that agents had no corroboration of the tipster's claim that Bedford would be heading to Virginia with the marijuana. We find these arguments meritless.
 
 
 27
 While it is quite true that agents never corroborated the Sullivan side of the story, neither did they find it to be false. A phone check revealed "Sullivan's" phone number to be registered to a woman, and two drive-by observations failed to pick up a motor home at the residence attached to that phone number. In sum, the tipster's information about Sullivan was neither verified nor disproved at the time of the stop. This is not fatal to the tip's reliability. In White, for instance, the Supreme Court found a tip sufficiently reliable to justify an investigatory stop, even though one of the tipster's major assertions (that defendant would be carrying a brown attache case with the drugs inside) turned out to be wrong. 496 U.S. at 327, 331-32 (the attache case was already in the car when officers arrived); see also Gates, 462 U.S. at 245 n. 14 (not fatal to tipster's reliability that he was mistaken about itinerary of one of the two defendants).
 
 
 28
 As for the tipster's identification of Bedford's motor home, Bedford seeks to hold the tipster to too high a standard. Even in the probable cause context, tipsters do not have to be "infallable" to be considered reliable. Gates, 462 U.S. at 245 n. 14 ("[w]e have never required that informants used by the police be infallible"). Here the tipster gave a generally accurate description of the motor home, including one of its colors.
 
 
 29
 Finally, police did indeed corroborate the tipster's statement that Bedford would be heading to Virginia. When Bedford was pulled over, he was heading out of town on a major highway, I-17. His direction was consistent with someone who planned to take I-17 to I-40 and then head east to Virginia. And most telling, agents spotted a Virginia license plate on the motor home, registered to Bedford at a Virginia address.[3]
 
 
 30
 In sum, the anonymous tip was sufficiently corroborated by subsequent police surveillance. When the police pulled Bedford over, their suspicion had a particularized, objective basis, and was thus reasonable.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Only after the investigatory stop in question did Ferguson discover that David Sullivan lived at 5102 East Fort Lowell Road
 
 
 [2]
 See Beck v. Ohio, 379 U.S. 89, 96 (1964) (suspect's prior record relevant but not dispositive in establishing probable cause)
 
 
 [3]
 The defendant in White was stopped prior to reaching her destination, Dobey's Motel. 496 U.S. at 327. She had, however, followed the most direct route from her apartment to the motel, and was stopped "just short" of it. Id