United States Court of Appeals
Fifth Circuit

**F I L E D**

July 18, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-41544

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MEHDI KHANALIZADEH

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:05-CR-96-31

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:

Mehdi Khanalizadeh appeals the district court's denial of his motion to suppress illegal drugs found in his Dodge Durango following a traffic stop. Finding no error, we AFFIRM.

I.

In June 2004, the district court authorized a wire tap for FBI agents to monitor phone calls by suspected drug dealers. Based on intercepted phone calls, authorities believed that several kilograms of cocaine would be transported from Dallas to Memphis on June 30, 2004. That day, authorities observed Janali Sefidkar driving a black Dodge Durango to Dallas and then leaving Dallas en route toward Memphis.

In July 2004, authorities intercepted calls that led them to believe Sefidkar would be transporting cocaine to Memphis again. Authorities observed Sefidkar driving the same Durango to Dallas and back to his residence in Plano. From there, Sefidkar drove a rental car while another individual drove the Durango, both vehicles traveling together along the same route toward Memphis. According to FBI Special Agent Mark Pfleghaar, who testified at the suppression hearing, rental vehicles are often used in drug trafficking operations to provide a decoy for the vehicle transporting drugs and to alert others if the transport vehicle is stopped by authorities.

On August 3, 2004, authorities intercepted a call by a Memphis buyer to a Dallas supplier, followed by a call to Sefidkar to transport another load. Authorities observed Sefidkar driving the Durango to an alleged drug "stash house" in Dallas. They later observed the Durango and a red Mitsubishi leaving Sefidkar's Plano residence with Sefidkar driving the Mitsubishi and defendant Mehdi Khanalizadeh driving the Durango. On August 6, 2004, the vehicles followed the same route as before, toward Memphis. This trip resulted in the stop and search of the Durango and the arrest and ultimate conviction of Khanalizadeh, which are the subject of this appeal.

The officer who made the traffic stop of Khanalizadeh on August 6 was Sergeant Harry Washington, an officer with the Ark-La-Tex narcotics task force and an eighteen-year veteran police officer. Washington had received a call on August 5 or 6 from an FBI agent telling him that a black Durango would probably be transporting drugs from Dallas and that Washington would be receiving a call from Texas Department of Public Safety agent Bill Ferrell. Ferrell contacted Washington on August 6 and told him authorities believed the Durango contained fourteen to fifteen pounds of cocaine. Ferrell told Washington that the Durango was missing its front license plate, a violation of Texas traffic laws, and would give him probable cause to stop the Durango.

2

Additionally, Ferrell told Washington that the Durango would be traveling with a red decoy vehicle.

Washington stopped Khanalizadeh in the Durango at 8:29 PM on August 6. He obtained Khanalizadeh's driver's license and proof of insurance and advised him that he was being stopped because his Durango was missing its front license plate. Washington noted that although the insurance card was under Khanalizadeh's name, it was for a Mercedes, not the Durango. Khanalizadeh then gave conflicting stories about when he acquired the Durango, stating he purchased it one week, then eight days, then two weeks prior. Subsequently, he stated that the Durango was "put into his name" three weeks prior. All of this conflicted with the dispatcher, who stated that the vehicle had been registered in May 2004.[1] When asked about his travel plans, Khanalizadeh said he was going to pick up his wife, later stating she was not his wife but his girlfriend or fiancée. He did not know her birthday.

After checking Khanalizadeh's driver's license, insurance card, and registration, Washington informed Khanalizadeh that it is part of his job to "make sure nobody's trafficking in any illegal narcotics" and asked Khanalizadeh several times if he had drugs or weapons and if officers could "look." Khanalizadeh responded in the affirmative. Washington specifically stated, "We want to search your vehicle for illegal narcotics and weapons," to which Khanalizadeh replied, "Sure, that's your job."

While searching the vehicle, Washington noticed fresh glue on the carpet, which was of a different color, and tool marks on the back seat's bolts. Washington told Khanalizadeh that he believed drugs were in the vehicle and that he would be taking the Durango to a mechanic's shop nearby.

---

[1] Later, Khanalizadeh produced evidence that he registered the Durango under his name on June 29, 2004. Regardless, Khanalizadeh clearly gave conflicting answers to Washington.

Khanalizadeh objected but agreed when given the option of going to the shop or waiting for a drug-sniffing dog. At the shop, which was about eight miles away, officers discovered a hidden compartment behind the back seat, and in it, fifteen pounds of cocaine.

Khanalizadeh was later indicted along with fifty-six co-defendants for conspiracy to distribute and possess illegal drugs. Before the district court, Khanalizadeh moved to suppress evidence obtained in the traffic stop and search of the Durango, and the district court denied the motion. Khanalizadeh entered a guilty plea, conditioned on the right to appeal the district court's denial of his motion to suppress, which he then appealed.

II.

A.

Khanalizadeh challenges Washington's initial stop of his Durango. Because Khanalizadeh did not raise this argument below, his argument is subject to the plain error standard of review. See United States v. Villegas, 404 F.3d 355, 358 (5th Cir. 2005). "This court finds plain error when: (1) there was an error; (2) the error was clear and obvious; and (3) the error affected the defendant's substantial rights." Id. "If all three conditions are met an appellate court may then exercise its discretion to notice a forfeited error but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 358-59.

"A police officer may stop a vehicle if he has probable cause to believe a traffic violation has occurred." United States v. Cole, 444 F.3d 688, 689 (5th Cir. 2006) (citing Whren v. United States, 517 U.S. 806, 810 (1996)). "The rule established by the Supreme Court in Whren allows officers to justify a stop by the occurrence of a traffic violation even though this is not the real reason for the stop." Id. However, the legal justification for the traffic stop must be "objectively grounded." Id.

Here, Washington had probable cause to initiate the traffic stop. Before pulling over Khanalizadeh, Washington verified that the Durango's front license plate was missing. Therefore, Washington had an "objectively grounded" legal justification for initiating the traffic stop -- a violation of Texas traffic laws requiring the display of a front license plate. See Cole, 444 F.3d at 689. Under Whren, it is irrelevant whether Washington's "real reason for the stop" was the missing plate. See id. The district court did not commit plain error.

B.

Khanalizadeh argues that even if the initial stop was lawful, Washington did not have reasonable suspicion to continue detaining Khanalizadeh after clearing his driver's license and registration. In assessing whether reasonable suspicion existed, "we review the district court's findings of fact for clear error and its determination of reasonable suspicion de novo." United States v. Estrada, 459 F.3d 627, 630 (5th Cir. 2006). "We view the evidence introduced at a suppression hearing in the light most favorable to the prevailing party." Id.

"Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." Id. at 631. "Officers must base their reasonable suspicion on 'specific and articulable facts,' not merely 'inarticulate hunches' of wrongdoing." United States v. Ibarra-Sanchez, 199 F.3d 753, 758 (5th Cir. 1999). However, "courts must allow law enforcement officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Brigham, 382 F.3d 500, 507 (5th Cir. 2004) (en banc) (internal quotation marks omitted).

Here, the district court did not err in determining that Washington had reasonable suspicion to continue his questioning, given the discrepancies in

Khanalizadeh's story and the FBI drug alert. Washington testified that in his experience drug traffickers often tell stories that "just don't add up" and often purchase vehicles for "mules" to use in drug trafficking, thus explaining the insurance card and registration date discrepancies. Additionally, Washington correctly relied on the drug alert. The FBI's wire taps and surveillance during June, July, and August of 2004 gave the FBI agents reasonable suspicion to believe that the Durango contained drugs. Under the "collective knowledge" doctrine, Washington could rely on the FBI's drug alert, even though he did not have personal knowledge of the evidence uncovered by the FBI, to establish his reasonable suspicion that the Durango contained drugs. See Ibarra-Sanchez, 199 F.3d at 758-60. It is immaterial to the length of the detention in this case that Washington actually stopped the Durango based on the missing front license plate. See id. The FBI drug alert distinguishes this case from cases in which the detaining officers did not possess reliable information that the detainees were presently engaged in drug trafficking. See United States v. Jenson, 462 F.3d 399 (5th Cir. 2006); United States v. Santiago, 310 F.3d 336 (5th Cir. 2002); United States v. Valadez, 267 F.3d 395 (5th Cir. 2001); United States v. Jones, 234 F.3d 234 (5th Cir. 2000); United States v. Dortch, 199 F.3d 193 (5th Cir. 1999); cf. Brigham, 382 F.3d at 510 (distinguishing Santiago, Jones, and Dortch by noting that the detaining officers in those cases continued to detain the drivers without reasonable suspicion).

Nor did the district court err in concluding that Washington's subsequent search of the vehicle was reasonably related to dispelling his justifiable suspicion. Washington became particularly suspicious when observing the fresh tool marks on the back seat's bolts and fresh glue on carpet of a different color. In Washington's experience, this evidence suggested a hidden compartment, which warranted a trip to the mechanic's shop to resolve his suspicion. Washington's actions were reasonable.

C.

Khanalizadeh challenges his consent to the search. The district court did not address the validity of his consent, and the parties disagree as to the proper standard of review. Regardless, we need not decide which standard applies because, even under de novo review, see Jenson, 462 F.3d at 403, we conclude that the district court did not err.

First, the district court did not err by failing to address whether Khanalizadeh's consent was voluntary. Washington asked Khanalizadeh four times for consent to search, and each time Khanalizadeh responded in the affirmative. Although an Iranian national, Khanalizadeh spoke and understood English fairly well, as evidenced by the video transcript.[2] As the government points out, the facts here are very similar to the facts in United States v. Sutton, 850 F.2d 1083 (5th Cir. 1988). In Sutton, this Court held that the district court's finding of voluntariness was not clearly erroneous where the officer did not physically restrain the defendant, did not brandish weapons, and did not use deception. Id. at 1085-86. As far as the record shows, none of these negative elements were present here. Nor is it problematic that Khanalizadeh did not know that he could refuse consent when all other factors point to the voluntariness of the consent. See id. at 1085. In short, all of the circumstances present here establish that his consent was voluntary.

Likewise, the district court did not err by failing to consider whether Khanalizadeh's consent was an independent act of free will, given that Washington's initial traffic stop was constitutional. See Jenson, 462 F.3d at 407.

Finally, the district court did not err by failing to consider whether Khanalizadeh revoked his consent when Washington decided to take the

---

[2] Khanalizadeh argues that the videotape of the traffic stop, not its transcript, should have been relied upon as the best evidence. Khanalizadeh did not object below, and accordingly, waived this argument. See BGHA, LLC v. City of Universal City, Tex., 340 F.3d 295, 299 (5th Cir. 2003).

Durango to the mechanic's shop, because at this point, the officers had probable cause to search the vehicle, given the FBI alert to Washington that the vehicle likely carried drugs, the inconsistent statements by Khanalizadeh, the incorrect insurance card, the red decoy vehicle, and now, the evidence of a hidden compartment. See Estrada, 459 F.3d at 633 ("under the law of this circuit, evidence of a hidden compartment supports 'probable cause' for a search/arrest"); United States v. Inocencio, 40 F.3d 716, 723-24 (5th Cir. 1994) (finding probable cause where officers stopped motorist believed to be following a decoy car on a remote private road known for its drug traffic, and where officers suspected a hidden compartment due to evidence of new paint and a truck bed that was higher than normal).

III.

For the foregoing reasons, the district court's denial of Khanalizadeh's motion to suppress, and consequently, his conviction, are

AFFIRMED.