**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-31109

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

EARNEST E. JORDAN Jr.,

Defendant-Appellant.

Appeal from the United States District Court
For the Middle District of Louisiana

November 6, 2000

Before KING, Chief Judge, PARKER, Circuit Judge, and KAZEN, District Judge.[1]

ROBERT M. PARKER, Circuit Judge:

Earnest Jordan appeals his conviction, after guilty plea, for being a felon in possession of a firearm, in violation of 18 U.S.C.A. § 922(g)(1)(West 2000). Jordan pleaded guilty conditioned upon his right to appeal the district court's denial of his motion

to suppress evidence gained by police officers in a warrantless

---

[1]District Judge of the Southern District of Texas, sitting by designation.

1

stop and search of his person.  We affirm.

Testimony at the suppression hearing established that on January 9, 1999, at about 6:45 p.m., Baton Rouge City Police Officers Tray Walker and Phillip Wyckoff were patrolling Gus Young Avenue.  This high crime area of the city is noted for frequent drug activity, robberies, rapes and murders.  The officers saw Earnest Jordan "running at full sprint" from the direction of Triple E Grocery, a store located about a block away.  As they observed Jordan, they saw him "looking back over his shoulder, left and right, over his shoulder.  At one point he tripped and fell to the ground, immediately got up and continued into a full sprint."

The officers, concluding that Jordan may have robbed the grocery store, pulled their car in front of Jordan and stopped him.  Officer Walker exited the car and told Jordan to put his hands on the hood of the car.  Jordan refused to do so, moving his hands erratically back and forth, pointing toward the edge of the store.  Walker testified that Jordan "kept saying, no, he wasn't giving the police statements" and "wouldn't give us straight answers."  When Walker grabbed Jordan's right arm, told him to calm down and to place his hands on the car, Jordan jerked his hand away.  Walker then handcuffed Jordan's arms behind his back.  Officer Wyckoff simultaneously conducted a pat-down search of Jordan.  The search revealed a semi-automatic pistol in Jordan's left pant leg.

Jordan moved to suppress the pistol, arguing that the police did not have reasonable suspicion sufficient to justify an

2

investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). He also contended that, even if the stop was legal, the pat-down search violated his Fourth Amendment rights.  The district court denied the motion.  As part of the oral ruling, the district court noted that (1) the conduct that first attracted attention to Jordan, given the time of night and vicinity of the store, warranted further inquiry by the officers; (2) Jordan's conduct after the stop, including the fidgety conduct and his refusal to give requested information, warranted their taking precautions; (3) the fact that the officers went to the store at the first opportunity to inquire if there had been a robbery reinforced the conclusion that they were concerned at the initial stop that Jordan had committed some offense involving the store and (4) the fact that there was no evidence contradicting the officers' version of events lent credibility to their testimony.

In reviewing a ruling on a motion to suppress, this court reviews questions of law *de novo* and factual findings for clear error.  *See United States v. Dortch*, 199 F.3d 193, 197 (5th Cir. 1999), *op. corrected on denial of reh'g*, 203 F.3d 883 (5th Cir. 2000).  The evidence is viewed in the light most favorable to the party that prevailed in the district court.  *See id.*  "The reasonableness of an investigatory stop and frisk is reviewed *de novo.*"  *United States v. Campbell*, 178 F.3d 345, 348 (5th Cir. 1999)(internal quotation and citation omitted).

3

An officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. *See Terry*, 392 U.S. at 30. "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, ___U.S.___, 120 S. Ct. 673, 675-76 (2000). Reasonable suspicion cannot be reduced to a neat set of legal rules, but must be determined by looking to "the totality of the circumstances – the whole picture." *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989).

Both parties argue that the Supreme Court's recent decision in *Illinois v. Wardlow,* 120 S. Ct. 673 (2000), which was decided after the district court denied Jordan's motion to suppress, guides our decision in this case. In *Wardlow*, Officer Nolan was participating in a police caravan sweep of a high-crime area. *See id.* at 674. Nolan observed respondent Wardlow "standing next to the building holding an opaque bag." *Id.* at 675. Wardlow "looked in the direction of the officers and fled." *Id.* at 675. Nolan stopped Wardlow and conducted a pat-down frisk which revealed that Wardlow was carrying a loaded handgun. *See id.*

Based on the totality of the circumstances, including the high-crime character of the neighborhood and Wardlow's "unprovoked

4

flight upon noticing the police," the Supreme Court concluded that "Officer Nolan was justified in suspecting that Wardlow was involved in criminal activity, and therefore, in investigating further." *Id*. at 676. The Court's holding was expressly limited to the propriety of the initial stop and thus excluded consideration of the lawfulness of the subsequent pat-down. *See id.* at 676 n.2.

Jordan argues that his situation is distinguishable from *Wardlow* in that Jordan was already running when the officers first observed him. Therefore, Jordan contends that his running cannot be characterized as flight from the police as discussed in *Wardlow,* and does not support an investigative stop. The government counters that the totality of the circumstances, including Jordan's running, the proximity of the store, his furtive glances over his shoulder, the time (6:45 p.m. on a January evening) and place (a high crime area), justified the officer's decision to stop Jordan. We agree.

*Wardlow* did not establish a bright-line test in cases where a defendant is seen to be running. Instead, citing *Terry*, *Wardlow* examined the totality of circumstances to determine whether the officer had "a reasonable, articulable suspicion that criminal activity is afoot." *Id.* at 675. *Wardlow* noted that an individual's presence in a "high crime area" is a relevant consideration, as is "nervous, evasive behavior." *Id.* Also,

"[h]eadlong flight – wherever it occurs – is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id.*

The undisputed facts in the instant case clearly do not portray a recreational runner. The defendant appeared to be fleeing from something or someone. This conduct, combined with the time and place, was at least as "ambiguous" as the observation in *Terry* that two individuals were "pacing back and forth in front of a store, peering into the window and periodically conferring." *Wardlow*, at 677 (discussing *Terry*). The officers were justified in detaining the defendant briefly to resolve this ambiguity.

Jordan further alleges that, even if the initial investigatory stop was permissible, the subsequent search of his person violated the Fourth Amendment. The officers testified that because Jordan was physically and verbally evasive to the officers' requests and because the incident occurred in a high crime area, they simultaneously handcuffed Jordan and performed a pat-down search for weapons to protect their safety. This court has held that, after making a proper *Terry* stop, the police are within their constitutional authority to pat down a party and to handcuff him for their personal safety even if probable cause to arrest is lacking. *See United States v. Webster*, 162 F.3d 308, 332 (5th Cir. 1998).

Handcuffing a suspect does not automatically convert an

6

investigatory detention into an arrest requiring probable cause. *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993). The relevant inquiry is whether the police were unreasonable in failing to use less intrusive procedures to safely conduct their investigation. *Id.* Here the officers first asked Jordan to place his hands on the hood of the car, but he refused to do so. He was acting nervously, saying "wait, wait" in response to the officers' questions, moving his hands erratically, and continuously looking over his shoulder. When one officer grabbed Jordan's arm and told him to calm down, Jordan jerked his hand away and walked towards the officers in "an aggressive-type manner." Under those circumstances, we conclude that the officers did not act unreasonably in handcuffing Jordan long enough to frisk him.

Based on the foregoing, we affirm the district court's denial of Jordan's motion to suppress.

AFFIRMED.