UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-11425

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

V.

BILLY RAY MILES,

Defendant-Appellant.

_____

On Appeal from the United States District Court for the
Northern District of Texas, Dallas Division
(3:00-CR-172-P)

_____

October 23, 2001

Before BARKSDALE and STEWART, Circuit Judges, and DUVAL, District Judge[1].

PER CURIAM:[2]

Billy Ray Miles appeals the denial of his motion to suppress a firearm found in his

automobile. We **AFFIRM**.

I.

_____

[1]District Judge of the Eastern District of Louisiana, sitting by designation.

[2]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

At approximately 11:30 p.m. on 21 January 2000, Officer Burge of the Dallas Police Department was in his patrol car. An unidentified citizen hailed him to stop. The citizen told Officer Burge that, as she was walking past 4516 Ash Street, several males offered to sell her drugs. Officer Burge knew this address to be a "drug house", and it was located in an area known for narcotics trafficking and violent crime. Officer Burge called for assistance; he, Officer Eichel and three other Officers proceeded to the house in marked cars to investigate.

The Officers arrived approximately five to six minutes later. They saw two males standing in the front parking lot near a parked automobile. They saw another male standing by a pay telephone. Upon the Officers' arrival, one of the men standing by the automobile fled. The other male by the automobile remained with his hands in his pockets. The Officers drew their weapons and ordered those remaining to get down on the ground. The man who attempted to flee was later apprehended by Officer Burge.

As Officer Eichel was securing the area, he heard music coming from the parked automobile. From about five or six feet away, Officer Eichel saw Miles sitting in the driver's seat. According to Officer Eichel, Miles was in a reclined position, as if he were trying not to be discovered. Officer Eichel testified that, as soon as he made eye contact with Miles, Miles furtively reached across the seat and placed an item underneath the passenger's seat. Officer Eichel could not tell what the object was, but he thought that it might be a weapon or contraband.

Officer Eichel ordered Miles out of the automobile and briefly patted him down. The search revealed nothing. Another Officer detained Miles as Officer Eichel searched underneath the passenger seat and found a .22 automatic Browning with one live round in the chamber and two live rounds in the magazine. Miles was placed under arrest for unlawful possession of a

weapon. Officer Eichel then conducted a more thorough pat-down search of Miles and recovered approximately ten grams of marijuana. A subsequent investigation revealed that Miles had previously been convicted for a felony offense.

Miles was indicted for possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). Miles pleaded not guilty and moved to suppress the weapon. At the conclusion of an evidentiary hearing, the district court denied the motion, stating its reasons orally. Miles then entered a conditional guilty plea, reserving his right to appeal the suppression ruling. Miles was sentenced to 72 months imprisonment, followed by three years of supervised release.

II.

The parties agree that the firearm was uncovered during an investigatory "stop and frisk" under *Terry v. Ohio*. 392 U.S. 1 (1968). The reasonableness of such a stop and frisk is reviewed *de novo*. *See United States v. Campell*, 178 F.3d 345, 348 (5th Cir. 1999). The evidence is reviewed, however, in the light most favorable to the Government as the prevailing party. *See id*. Thus, the denial of a motion to suppress will be upheld so long as there is any reasonable view of the evidence to support it. *See id*.

A *Terry* stop and frisk is appropriate "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous . . . ." *Terry*, 392 U.S. at 30. This can be stated as a two-part rule. First, the Officer must have "a reasonable suspicion supported by articulable facts that criminal activity may be afoot". *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2001). Of course, "an officer conducting an

investigatory stop . . . must articulate 'a particularized and objective basis for suspecting the *particular person* stopped of criminal activity'". *Illinois v. Wardlow*, 528 U.S. 119, 128 (2000) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)) (emphasis added). Second, the Officer must have "reason to believe that he is dealing with an armed and dangerous individual". *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (quoting *Terry*, 392 U.S. at 24). At one time, a *Terry* stop and frisk was limited to the outer clothing of the person. *Terry*, 392 U.S. at 24. It has since been extended to include a search of an automobile where the driver was properly stopped under *Terry* principles. *See Michigan v. Long*, 463 U.S. 1032, 1049 (1983).[3]

The standard we apply to each prong of this two-part test is an objective one. The officer must have a "reasonable suspicion" that the individual to be stopped and frisked is both involved in criminal activity and armed. *Michelletti*, 13 F.3d at 340. Of course, reasonable suspicion is more than a hunch. *See id.* Rather, "suspicion is reasonable if it is based on specific and articulable facts and the rational inferences that can be drawn therefrom". *United States v. Guerrero-Barajas*, 240 F3d. 428, 432 (5th Cir. 2001). In determining reasonable suspicion *vel non*, we consider the totality of the circumstances; ordinarily, innocent behavior "may provide a composite picture sufficient to raise reasonable suspicion in the minds of experienced officers". *United States v. Holloway*, 962 F.2d 451, 459 (5th Cir. 1992) (footnote omitted). Applying these principles to the case at hand, the issue then becomes whether, given the totality of the

---

[3] We do not consider here whether the Officer's search of the automobile itself was reasonably related in scope to the circumstances of the initial investigation of Miles, because Miles did not raise the issue in his appeal. Pursuant to Fed. R. App. P. 28(a)(6), "contentions not briefed are waived and will not be considered on appeal". *Trust Co. v. N.N.P. Inc.*, 104 F.3d 1478, 1485 (5th Cir. 1997) (quoting *Zeno v. Great Atl. & Pac. Tea Co.*, 803 F.2d 178, 180 (5th Cir. 1986)).

circumstances, the Officers had a reasonable suspicion Miles was involved in criminal activity and was armed.  We conclude that they did.

The totality of the circumstances at hand justified the *Terry* search of Miles and his automobile.  First, the Officers received a citizen's report of several males trying to sell drugs in front of a particular address late at night.  "[A]bsent specific reasons for police to doubt his or her truthfulness, an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration".  *United States v. Blount*, 123 F.3d 831, 835 (5th Cir. 1997).  In any event, the citizen's report was subsequently corroborated.  As the citizen had reported, several males were gathered in front of the particular address.

Second, the Officers knew the location to be notorious for drug trafficking and violent crime.  Mere presence in a high-crime area, standing alone, will not create a reasonable suspicion.  *See Brown v. Texas*, 443 U.S. 47, 52 (1979).  Nonetheless, it is one factor among many to be considered in the totality of the circumstances. *See United States v. Jordan*, 232 F.3d 447, 449 (5th Cir. 2000).

Third, one of the men fled upon seeing the Officers.  "Headlong flight . . . is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Wardlow*, 528 U.S. at 124.  Although Miles was not the one who fled, the flight of a person standing near his automobile provided further reason to support the Officers' suspicion of Miles' involvement.

Fourth, and finally, were Miles' actions.  Officer Eichel saw Miles reclined in the driver's seat of his automobile, apparently in an attempt to go unnoticed.  Although Miles now takes issue with this interpretation of his action, Officer Eichel's testimony is certainly a reasonable view.  *See*

*Campell*, 178 F.3d at 348. Further, Miles reached to the passenger's side of the automobile as if to hide something under the seat. Of course, he *could* have been reaching for a music CD as he claims. He *could* have also been handling a weapon. Reasonable suspicion does not require that there be "no reasonable hypothesis of innocent behavior". *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 n.5 (5th Cir. 1999). Further, this court has found that furtive behavior almost identical to Miles' supported finding reasonable suspicion. *See United States v. Watson*, 953 F.2d 895, 897 (5th Cir. 1992) ("In this case, [the Officer], upon first making eye contact with [the defendant], saw him move about in his seat as if to conceal or retrieve some item.").

From these circumstances, we conclude the Officers had a reasonable suspicion that Miles was involved in criminal activity and that he was armed. When making a reasonable suspicion determination, it is important to remember that "each case must finally turn on its own facts". *United States v. Himmelwright*, 551 F.2d 991, 995 (5th Cir.), *cert. denied*, 434 U.S. 902 (1977). Any one of the above factors, standing alone, may not be enough to create reasonable suspicion; but, in the aggregate, they are sufficient. "Our determination of reasonable suspicion is made by looking at all the circumstances together to weigh not the individual layers but the laminated total." *Ibarra-Sanchez*, 199 F.3d at 759 (internal quotation marks omitted).

Nonetheless, Miles maintains the district court applied the wrong standard. He asserts that the district court found that the Officers only had reason to suspect that criminal activity was being conducted at 4516 Ash Street generally. According to Miles, the court made no finding that the Officers had specific reasons to suspect Miles was involved in the criminal activity. To support this contention, Miles relies heavily on the district judges ruling, in which he repeatedly refers to the Officers' belief that "criminal activity was afoot".

First, the district court specifically noted that "the defendant's actions" were among the factors considered in the totality of the circumstances. Thus, the court did find the Officers had a reason to suspect Miles was personally involved in the criminal activity. Second, by speaking of criminal activity being "afoot," the district court was repeating the precise language of *Terry*.[4] It is fundamental that the Officer must have reason to suspect that the particular individual was involved in the criminal activity, and that concept is not lost in the language of *Terry*.

### III.

For the foregoing reasons, the judgment is

*AFFIRMED.*

---

[4]*Terry* stated:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that *criminal activity may be afoot* and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. at 30 (emphasis added). This precise language has become a fixture in this nation's Fourth Amendment jurisprudence. *See*, *e.g.*, *Florida v. J.L.*, 592 U.S 266, 269–70 (2000); *Wardlow*, 528 U.S at 123; *United States v. Sokolow*, 490 U.S. 1, 7 (1988); *Jordan*, 232 F.3d at 449; *Ibarra-Sanchez*, 199 F.3d at 758.