United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 8, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 06-40932
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARY LYNN MALLOY,

Defendant-Appellant.
_____

On Appeal from the United States District Court for the Eastern
District of Texas, Beaumont Division,
No. 1:05-CR-33-2
_____

Before SMITH, BARKSDALE, AND DENNIS, Circuit Judges.

PER CURIAM:[*]

Having entered a conditional guilty plea, defendant Gary Malloy appeals the district court's denial of his motion to suppress evidence. Because Malloy's claim is squarely foreclosed by Supreme Court and Fifth Circuit precedent, we AFFIRM Malloy's conviction.

**I.**

Between October 2004 and February 2005, United States Immigration and Customs Enforcement ("ICE") agents conducted an investigation into certain suspected drug trafficking activities in

---

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

the Houston, Texas area.  As a result of information gathered during this investigation, the agents believed narcotics were being transported in a white pickup truck, outfitted with a welding machine, that the agents observed departing a targeted residence on the morning of February 16, 2005.  ICE agents contacted Sergeant Tracy Sorge of the Orange County, Texas sheriff's department and asked him to attempt to stop the vehicle, identify its occupants, and investigate the matter at his discretion.

Sorge saw the welding truck traveling on Interstate 10 in Orange County at about 6:45 a.m.  He followed the vehicle for a short distance, and, after observing three traffic violations, he stopped the vehicle.  Sorge then asked the driver of the truck, Marcos Santana, to step to the rear of the vehicle.  As he issued Santana a warning citation, Sorge asked Santana a number of questions.  Santana appeared visibly nervous, and he gave inconsistent and contradictory answers to a number of Sorge's questions.

Sorge then approached the passenger side of the vehicle to speak with the passenger, defendant Gary Malloy, and to obtain the registration and insurance information for the vehicle.  Malloy provided Sorge with the registration and insurance papers, which indicated that the vehicle was registered to Malloy.  Sorge proceeded to ask Malloy a number of questions.  Some of Malloy's responses were inconsistent with statements made earlier by Santana, and Malloy changed his story on at least one occasion

2

during the course of Sorge's questioning. Like Santana, Malloy appeared to be extremely nervous.

Sorge next asked Malloy if he would consent to a search of the vehicle. Malloy agreed. While searching the bed of the truck, Sorge found two oxygen tanks, ostensibly for use in welding, that appeared suspicious to him.[1] Sorge noticed that there was fresh paint sprayed on the caps of the tanks; that the upper portion of the tanks appeared smooth, while the bottom portion appeared to be pitted from several layers of paint; that the valves on the tanks had been installed only recently; that the tanks did not contain sufficient pressure to be used for welding; that the gas from the tanks smelled like compressed air, not the pure oxygen that would be used in welding; that the weight of the tanks was concentrated at the bottom, rather than distributed evenly throughout the tanks; and that the outside of one of the tanks was covered in Bondo, an automotive body filler. Based on these observations, Sorge came to believe that the oxygen tanks contained hidden compartments that might house contraband.

Sorge then handcuffed Malloy and Santana and read them the Miranda warnings. He also obtained Malloy's consent to x-ray the

---

[1]Sorge, who had worked narcotics for six years, had completed 400 hours of specialized drug interdiction training. Sorge had also obtained a certificate in welding from the Lamar Institute of Technology in 2002.

oxygen tanks.[2]  Sorge then scraped away some of the Bondo from the tanks and discovered that there were welded seams in the tanks. Another officer transported Santana and Malloy to the Orange County jail, and Sorge took the oxygen tanks to a mechanic's shop.  Once there, Sorge confirmed that each tank contained a welded metal diaphragm that divided the tank into two compartments.  Sorge then cut the tanks open using a metal chop saw and found 13 square, kilogram-sized packages of cocaine in the bottom compartment of each tank.

## II.

On March 3, 2006, Malloy was charged in a two-count indictment with conspiracy to possess with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and possession with the intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1).  The government filed a superseding indictment on April 6, 2005.  The superseding indictment added a notice of intent to seek criminal forfeiture. Malloy moved to suppress the evidence obtained from the search of his vehicle on the ground that the search violated his Fourth Amendment rights.  Malloy argued that (i) the search of the oxygen tanks exceeded the scope of his consent to the search; and (ii) the search of the oxygen tanks could not be justified under the

---

[2]It is undisputed that the oxygen tanks were never, in fact, x-rayed.

4

"automobile exception" to the Fourth Amendment's warrant requirement because the police had complete control over the vehicle and its contents at the time that the oxygen tanks were cut open.

The magistrate judge conducted a hearing on Malloy's motion to suppress. On December 5, 2005, the magistrate judge issued a report and recommendation stating that the motion to suppress should be denied. Malloy filed objections to the report and recommendation, but on December 27, 2005, the district court adopted the magistrate judge's recommendation and denied the motion to suppress.

On January 17, 2006, Malloy entered a conditional guilty plea to count two of the superseding indictment under Federal Rule of Criminal Procedure 11(a)(2). In his plea, Malloy reserved the right to appeal the district court's ruling on his motion to suppress. On May 24, 2006, the district court sentenced Malloy to 36 months in prison, to be followed by three years on supervised release.

## III.

On an appeal of a motion to suppress evidence, this court reviews the district court's legal conclusions de novo and its findings of fact for clear error. E.g., United States v. Mays, 466 F.3d 335, 342 (5th Cir. 2006); United States v. Jordan, 232 F.3d 447, 338 (5th Cir. 2000). We consider the evidence in the light

5

most favorable to the party who prevailed in the district court. Jordan, 232 F.3d at 448.

**IV.**

The sole issue before this court on appeal is whether Sorge's warrantless search of the oxygen tanks was justified under the "automobile exception" to the Fourth Amendment's warrant requirement. Malloy does not challenge on appeal either the legality of Sorge's initial stop of the vehicle or the district court's conclusion that Sorge had probable cause to believe that the oxygen tanks contained contraband. Rather, Malloy argues only that the automobile exception to the warrant requirement, which has its roots in the inherent mobility of automobiles,[3] does not permit the warrantless search of a container located in the vehicle once the police exercise total control over the vehicle and its contents. In such situations, Malloy argues, the justification for the automobile exception no longer applies, and the police should be required to obtain a warrant.

Both the Supreme Court and this court have, however, repeatedly held that the automobile exception can justify a warrantless vehicle search even if the police exercise complete control over the vehicle and do not conduct the search immediately.

---

[3]See, e.g., Chambers v. Maroney, 399 U.S. 42, 51 (1970) ("[T]he circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable.").

See <u>United States v. Johns</u>, 469 U.S. 478, 484 (1985) ("There is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure."); <u>Michigan v. Thomas</u>, 458 U.S. 258, 260 (1982) ("It is thus clear that the justification to conduct . . . a warrantless search does not vanish once the car has been immobilized . . . ."); <u>United States v. Ross</u>, 456 U.S. 798, 807 n.9 (1982) ("[I]f an immediate search on the street is permissible without a warrant, a search soon thereafter at the police station is permissible if the vehicle is impounded."); <u>United States v. McSween</u>, 53 F.3d 684, 689 (5th Cir. 1995) ("If probable cause justified a warrantless search on the roadside, it likewise justified one at the station after the car was impounded."); <u>United States v. Harrison</u>, 918 F.2d 469, 473 (5th Cir. 1990) ("The search need not be done immediately and if begun at the scene can be continued later at another location."). In addition, it is immaterial that the evidence Malloy seeks to suppress was located in a separate container within the vehicle. See <u>California v. Acevedo</u>, 500 U.S. 565, 579-80 (1991). Because it is undisputed that Sorge had probable cause to search the oxygen tanks that he found in Malloy's vehicle, it was permissible for him to conclude the search away from the scene after a brief delay. Accordingly, we AFFIRM the district court's ruling and Malloy's conviction.