United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 25, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

**No. 06-60293**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellant,**

**versus**

**CHARLES LAWSON,**

**Defendant-Appellee.**

---

**Appeal from the United States District Court
for the Southern District of Mississippi
(3:04-CR-89)**

---

Before SMITH, BARKSDALE and DENNIS, Circuit Judges.

PER CURIAM:[*]

Charles Lawson is charged, *inter alia*, with being a felon in possession of a firearm. In this interlocutory appeal, the Government challenges the district court's pre-trial order granting Lawson's motion to suppress the firearm. **VACATED AND REMANDED.**

I.

On 20 November 2003, a Jackson, Mississippi, Police Officer was conducting field interviews in a Jackson neighborhood, investigating a tip from his supervisors that an individual known

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

as "G Dog" had been responsible for several armed robberies in the area. Interviewees told the Officer that "G Dog" was a tall, large-built, black male named Jerome.

Later that day, the Officer saw a man, later identified as Lawson, who fit the description of "G Dog". The Officer approached Lawson to conduct a field interview. The district court found the Officer either crossed the street and walked up to Lawson, asking to talk with him, or called to Lawson from across the street and asked to do so. According to the Officer, as soon as Lawson saw him, he began to act nervous and started walking away quickly. Although the district court noted the Officer testified Lawson was acting nervous, it is not clear the court included this as a finding of fact. In any event, as the Officer got closer to Lawson, Lawson began to run.

The Officer pursued Lawson as he ran through lanes of traffic and into a shopping-center parking lot. Lawson then tripped and fell, and the Officer saw what appeared to be the handle of a firearm in Lawson's waistband. After a struggle, Lawson was arrested and the firearm seized.

Lawson was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and as an Armed Career Criminal, under 18 U.S.C. § 924(e). He moved to suppress the firearm, claiming: the Officer conducted an unlawful search and seizure because he sought to detain him *without*

*reasonable suspicion*; and the Officer had no right to chase him after he began to walk away.

At the suppression hearing in February 2006, the Officer was the only witness. The Government maintained: he had sufficient reason to approach Lawson to try to talk to him; and his nervous behavior and subsequent flight gave the Officer the requisite reasonable suspicion that Lawson had asserted was lacking. The district court orally granted Lawson's motion, holding the Officer violated his Fourth Amendment rights because the Officer did not even have reasonable suspicion to approach Lawson and detain him prior to his running. Along that line, the court ruled: by walking away, Lawson indicated he did not want to talk to the Officer; Lawson's running did not give the Officer reason to give chase, especially because the Officer's actions provoked Lawson into doing so; and, as a result, seizing Lawson after he tripped and fell was unlawful.

## II.

Before reaching the merits of the Government's interlocutory appeal, we must first consider Lawson's jurisdictional challenge. It fails.

### A.

In his brief, Lawson claimed jurisdiction is lacking because the notice of appeal, although timely filed, did not certify, as required by 18 U.S.C. § 3731, that the appeal "is not taken for

purposes of delay and the evidence is a substantial proof of a fact material in the proceeding". In response, the certification was filed. The Government admitted it erred in not timely making the required certification but asserted this did not prejudice Lawson.

The failure to timely file the § 3731 certification is not jurisdictional; it may be excused at the discretion of the court. *E.g.,* **United States v. Smith**, 135 F.3d 963, 967-68 (5th Cir. 1998) (holding § 3731's timing requirement is not jurisdictional and is "relevant only in considering the 'equities' of its appeal"); **United States v. Hanks**, 24 F.3d 1235, 1239 (10th Cir. 1994) (holding, because § 3731 is to be construed liberally, a delayed filing of § 3731 certification is excused unless the appellee can show "actual substantial prejudice").

At oral argument, Lawson admitted he suffered *no* prejudice due to the untimely filing. The tardy filing is excused.

B.

In reviewing a suppression ruling, findings of fact are reviewed only for clear error; conclusions of law, *de novo*. *E.g.,* **United States v. Jordan**, 232 F.3d 447, 448 (5th Cir. 2000). Evidence introduced at a suppression hearing is viewed, of course, in the light most favorable to the prevailing party. **Id.**

The Government does not contest the district court's findings of fact; instead, it challenges the resulting conclusions of law. In that regard, it claims: the facts found, when viewed in their

4

totality, gave the Officer reasonable suspicion to conduct an investigatory stop, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).

Consistent with the Fourth Amendment's proscription against "*unreasonable* searches and seizures" (emphasis added), a police officer may conduct a brief, investigatory stop when he has reasonable, articulable suspicion of criminal activity. *Terry*, 392 U.S. at 30 (*Terry* stop). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a *minimal level of objective justification* for making the stop." *Illinois v. Wardlaw*, 528 U.S. 119, 123 (2000) (emphasis added). Reasonable suspicion can be determined only by looking to "the totality of the circumstances — the whole picture". *United States v. Sokolow*, 490 U.S. 1, 8 (1989).

On the other hand, an officer need not have such "minimal level of objective justification" before asking an individual if he is willing simply to talk to the officer. *United States v. Williams*, 365 F.3d 399, 404 (5th Cir. 2004) ("Under the consensual encounter arm of Fourth Amendment jurisprudence, the police can initiate contact with a person without having an objective level of suspicion, during which time the police may ask questions of the person, ask for identification, and request permission to search baggage that the individual may have in his possession."). That

5

individual, however, has a right to ignore the police and "go on his way". *Florida v. Royer*, 460 U.S. 491, 498 (1983). Pertinent to the issue presented here, an individual's "refusal to cooperate, *without more*, does not furnish the *minimal level of objective justification* needed for detention and seizure". *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (emphasis added).

In claiming the totality of the circumstances justified the Officer's detaining Lawson, the Government maintains he exhibited behavior consistent with someone engaged in criminal activity: when the Officer approached Lawson to try to talk to him, he began to act nervous and quickly started walking away; as the Officer moved closer, Lawson began running through busy streets in order to avoid the Officer. In countering that his running from the Officer can not be considered suspicious behavior, Lawson maintains: he was merely exercising his rights to go about his business and not cooperate with authorities; and, therefore, his conduct can not serve as the basis for a *Terry* stop.

Despite his assertions to the contrary, Lawson did not merely ignore the Officer and go about his business. Instead, as found by the district court: when approached, Lawson began to run away. He did so through a traffic-filled street. His behavior approaches that in *Illinois v. Wardlaw*. There, police officers were patrolling a neighborhood known for heavy narcotics trafficking. 528 U.S. at 121. They observed Wardlaw standing next to a

6

building, holding an opaque bag; he "looked in the direction of the officers and fled". *Id.* at 121-22. Wardlaw was stopped and frisked, and a loaded handgun was seized.

The Supreme Court upheld the denial of Wardlaw's suppression motion, holding that, although neither his presence in a high-crime area nor his flight *alone* was indicative of suspicious behavior, his "unprovoked flight upon noticing the police" justified their suspecting he was involved in criminal activity and, therefore, investigating further. *Id.* at 124-25. "Headlong flight ... is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is *certainly suggestive of such*." *Id.* (emphasis added); *see also* **United States v. Jordan**, 232 F.3d 447, 449 (5th Cir. 2000) (upholding the denial of a suppression motion under similar circumstances: "The undisputed facts ... clearly do not portray a recreational runner. The defendant appeared to be fleeing from something or someone".).

Lawson claims, however, and the district court held: the Officer had "no right to detain him and stop him" after Lawson refused to talk to him; and, indeed, the Officer's actions "caused" Lawson's flight. An attempt to initiate a consensual encounter on the street does not constitute provocation; to the contrary, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place

7

[and] by asking him if he is willing to answer some questions". *Royer*, 460 U.S. at 497.

Lawson's "unprovoked flight" upon seeing the Officer was "not going about one's business; in fact, it [was] just the opposite". *See* **Wardlaw**, 528 U.S. at 125. It, along with other factors, discussed below, gave the Officer reasonable suspicion to conduct a **Terry** stop. **Id.**

Lawson also contends the other factors cited by the Officer in justifying the **Terry** stop do not establish reasonable suspicion: for example, the general description of the robbery suspect as a "tall, large-built black male" has *de minimis* value in a predominantly black neighborhood; and the Officer's conclusion that Lawson was in a high-crime neighborhood does not mean Lawson was the suspect. Each factor by itself may not justify a **Terry** stop; but, the *totality* of these factors, along with Lawson's unprovoked flight, provided the Officer with reasonable suspicion to detain him. *E.g.,* **Sokolow**, 490 U.S. at 7-8.

### III.

For the foregoing reasons, the suppression order is **VACATED**; this matter is **REMANDED** for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

8