United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 28, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

---

**No. 06-30726**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellant,**

**versus**

**NICHOLAS JOSEPH DARENSBOURG,**

**Defendant-Appellee.**

---

**Appeal from the United States District Court
for the Middle District of Louisiana
(3:05-CR-124)**

---

Before GARWOOD, BARKSDALE, and GARZA, Circuit Judges.

PER CURIAM:[*]

The Government's interlocutory appeal concerns the district court's granting Nicholas Darensbourg's motion to suppress evidence seized as a result of a patdown search (patdown). **REVERSED** and **REMANDED**.

I.

In January 2005, Officers engaged in a narcotics sting operation arrested Fitzgerald for possession of over 100 3,4 methylenedioxymethamphetamine (MDMA) pills (also known as ecstacy),

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

marijuana, and a loaded handgun. After his arrest, Fitzgerald gave Officers permission to search for contraband in his bedroom in a house under surveillance.

When Officers arrived at that house, they found Aycock and Darensbourg playing video games. Aycock confirmed he was the homeowner and Fitzgerald lived there; stated he had no knowledge of Fitzgerald's involvement in narcotics trafficking; and consented to the house's being searched.

Prior to the search, Officers advised Aycock and Darensbourg they would be patted down for officer safety. Before they commenced the patdown, however, Darensbourg stated he had a small bag of marijuana in his trousers' pocket. He was subsequently arrested and read his *Miranda* rights. In searching Darensbourg, in addition to the marijuana, Officers found $840 and keys to his vehicle parked outside. Officers contend Darensbourg consented to his vehicle's being searched, a claim he disputes. In any event, a search of the vehicle revealed various quantities of ecstacy pills and powder.

Officers then called a Deputy, who confirmed he was related to Darensbourg. After speaking with Darensbourg on the telephone, the Deputy informed Officers that Darensbourg admitted he had more than 1,000 ecstasy pills in his apartment, as well as large sums of cash. Officers obtained a search warrant for Darensbourg's apartment, based on the vehicle search and Darensbourg's statements

2

to the Deputy. At Darensbourg's apartment, they recovered ammunition, approximately 4,000 ecstacy pills, and $9,000.

Darensbourg was indicted in June 2005 for: possession with intent to distribute MDMA, in violation of 21 U.S.C. § 841(a)(1); possession of marijuana, in violation of 21 U.S.C. § 844(a); and possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He moved to suppress, claiming: he did not give consent to his vehicle's being searched; and the subsequent search of his apartment was tainted by the unlawful vehicle search. Darensbourg did *not* challenge the constitutionality of the patdown.

In granting the suppression motion in March 2006, the district court stated that both parties had "given short shrift to the critical chain of events": namely, the patdown, which precipitated the two subsequent searches. The court held, *sua sponte*, that the patdown did *not* meet the requirements of **Terry v. Ohio**, 392 U.S. 1 (1968). In short, in granting relief, the court went outside the claims presented in the suppression motion.

In so holding, the court noted the Government failed to provide any articulable facts that would have justified finding Darensbourg was armed and dangerous before conducting the patdown. In this regard, the court found Darensbourg and Aycock were very cooperative. And, based on holding the patdown unconstitutional, the marijuana seized as a result of it was suppressed. Moreover, the subsequent searches of Darensbourg's vehicle and apartment were

3

held tainted by the initial constitutional violation concerning the patdown, and the evidence seized in those searches was likewise suppressed.

The Government moved for reconsideration, asking for a new evidentiary hearing and claiming: because the constitutionality of the patdown was not challenged by Darensbourg, they were not able to introduce evidence at the suppression hearing to show the reasonable justification for it. The Government also contended that, even without another hearing, it had presented sufficient evidence to show Officers had the following reasonable justification to perform the patdown: they knew, as part of their sting operation, that Fitzgerald had just left the house where Darensbourg was located to perform a drug transaction, armed with a concealed weapon, and this gave them reason to believe the occupants of that house were also drug traffickers who were possibly armed. In the alternative, the Government asserted: Darensbourg's voluntary statement to Officers that he had marijuana gave them independent probable cause to arrest and search him; or the evidence at issue could be seized under the good-faith exception to the exclusionary rule.

In June 2006, the district court denied the motion for reconsideration. (The district court's authority to rule on an issue not raised by Darensbourg is questionable. Needless to say, Darensbourg was the master of his suppression motion. In any

4

event, before ruling on an issue it raised *sua sponte*, the court should have granted the Government's request for a hearing to present evidence concerning the Officers' basis for the patdown. Perhaps the district court believed the record contained enough evidence to rule without an additional hearing. In issuing such *sua sponte* rulings, however, district courts should ensure the parties have an opportunity to present their contentions and evidence, so that factual and legal questions are developed fully.)

## II.

For a suppression-motion ruling, findings of fact are reviewed for clear error; conclusions of law, *de novo*. *E.g., United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000). Evidence introduced at a suppression-motion hearing is viewed, of course, in the light most favorable to the prevailing party. *Id.*

The primary issue at hand is the reasonableness of the patdown. Under *Terry*, a law-enforcement officer may briefly detain and frisk an individual, as long as the officer has a reasonable, articulable *suspicion* of criminal activity. 392 U.S. at 30. "The officer need not be absolutely certain that the individual is armed; the issue is whether a *reasonably prudent man in the circumstances* would be warranted in the *belief* that his safety or that of others was in danger." *Id.* at 27 (emphasis added). Accordingly, for determining reasonable-suspicion *vel non*, a court must consider the totality of the circumstances. *United States v.*

5

*Arvizu*, 534 U.S. 266, 273 (2002).  "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."  *Id.* (internal citations and quotation marks omitted).

In granting the suppression motion, the district court relied on *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979), for the proposition that Darensbourg and Aycock's presence in the home where a narcotics search was to take place, without more, did not provide individualized *suspicion* that Darensbourg was either involved in drug trafficking or armed and dangerous.  *Ybarra* held unconstitutional the search of a bar patron, which occurred during the execution of a search warrant authorizing searching the tavern and a bartender for heroin possession.  *Id.* at 88.  The Court agreed that police officers had a valid warrant to search the premises, but that warrant "gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers".  *Id.* at 92.

The circumstances at hand are markedly different.  We are mindful that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to *probable cause* to search that person".  *Id.* at 91 (emphasis added); *see also* *United States v. Cole*, 628 F.2d 897, 899 (5th Cir. 1980) (mere presence at a dwelling suspected of containing narcotics, by

6

itself, is not enough to establish reasonable suspicion).  In *Ybarra* the bar patrons had no relationship with the bar or the bartender — therefore, searching the individuals present at that bar did not comport with *Terry*'s requirement for reasonable, articulable suspicion.

In contrast, occupants of a house generally have a closer relationship, and it is not unreasonable to think their relationship might extend to involvement in illegal activities. (Although it was later determined that Darensbourg did not reside at the house, the Officers did not know that previous to the patdown.)  Along that line, the Officers had been conducting surveillance of the house and had just arrested Fitzgerald, who, a short time before, had exited the house carrying a large quantity of drugs and a loaded handgun.  Based on these factors, reasonable officers could believe that Darensbourg and Aycock could also have been involved in drug trafficking and were therefore possibly armed as well.  *E.g., United States v. Majors*, 328 F.3d 791, 795 (5th Cir. 2003) ("[F]irearms are tools of the trade for those engaged in illegal drug activities." (internal citations and quotation marks omitted)); *see also United States v. Reid*, 997 F.2d 1576, 1579 (D.C. Cir. 1993) (defendant's proximity to drug apartment being searched and the officer's concern for safety justified *Terry* frisk).  The patdown was reasonable.  (Accordingly, we need not

7

consider the earlier described, alternative claims raised by the Government.)

The district court held the patdown tainted the two subsequent searches and seizures involving Darensbourg's vehicle and apartment.   Therefore, among other proceedings on remand, the district court is to rule on the contested validity of those two searches and seizures.

III.

For the foregoing reasons, the suppression ruling is **REVERSED** and this matter is **REMANDED** for further proceedings.

***REVERSED AND REMANDED***