# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 10, 2011

No. 10-10358
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MICHAEL HOOKER,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CR-229-5

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Michael Hooker ("Hooker") appeals the district court's denial of his motion to suppress approximately one kilogram of cocaine seized from his car as well as his motion to suppress inculpatory statements made to the police after a subsequent arrest. Hooker argues that the district court erred in denying his motion to suppress the cocaine for two reasons: (1) the police officer who searched his car did not have probable cause because the collective knowledge

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10358

doctrine, which could be used to impute probable cause to the searching officer, did not apply; and (2) the inventory of Hooker's rental car was an unlawful search because the officer did not conduct the inventory pursuant to the department's policy.  Hooker also argues that the district court erroneously admitted statements he made to the police because the statements were coerced.  We AFFIRM the district court's denial of Hooker's motions to suppress.

## I.  FACTS AND PROCEDURAL HISTORY

On June 3, 2008, Agent Tony Dyess ("Agent Dyess"), a Fort Worth police officer assigned to a Drug Enforcement Administration ("DEA") task force, lawfully intercepted a phone call from Hooker to Jesus Hernandez ("Hernandez") asking to purchase a kilogram of cocaine from Hernandez at his home in Grand Prairie, Texas.  Shortly after intercepting the call, Agent Dyess observed, via a pole camera, Hooker enter Hernandez's home and then exit with an item that Agent Dyess understood to be a kilogram of cocaine.  Hooker placed the item in the trunk of his vehicle and departed.  Soon after leaving, Hooker received a phone call from Hernandez increasing the price of the cocaine.  After listening to this call, Agent Dyess contacted the DEA team responsible for the surveillance of Hernandez's house and told them not to stop Hooker at that time.  Hooker returned and took the item from the trunk of his car back into Hernandez's house.  Hooker soon departed, placing the item back in the left side of the trunk.  During this time, Agent Dyess was in communication with the DEA surveillance team and told them that he had probable cause to believe there was a kilogram of cocaine in the trunk of Hooker's vehicle.

Officer Kelly and his partner Officer Parker—Grand Prairie police officers who would ultimately locate and stop Hooker—began their shift on June 3, 2008 by meeting DEA agents at an elementary school in Grand Prairie.  The officers and DEA agents exchanged phone numbers to allow for direct communication.  Approximately one hour later, Officer Kelly "located the vehicle that was told to

No. 10-10358

us that a certain individual [Hooker] would be driving." Officer Kelly, who had been given Hooker's license plate number, began following Hooker's Chevrolet Impala. He testified that it was "the vehicle that was described to us, the one we were looking for to conduct a traffic stop." Hooker failed to signal for a lane change, and Officer Kelly made a traffic stop. Hooker was compliant and provided the officers with his Tennessee driver's license and an expired insurance card. While checking for outstanding warrants, the officers observed Hooker talking on his telephone, which concerned the officers because of intelligence they had received from the DEA about Hooker's phone use. The officers cited Hooker for two traffic violations and arrested him.

The officers placed Hooker in the patrol car and began the inventory process to impound Hooker's vehicle because the officers believed the vehicle was without insurance. Later, the officers found a rental agreement, which Hooker argues established that there was some insurance on the vehicle, but the officers continued to search the vehicle. Additionally, the Grand Prairie police department policy stated that an inventory must occur with the tow truck driver present, but there was no tow truck driver at the scene. By this time, Officer Chasteen, another Grand Prairie police officer, had arrived at the scene, and he and Officer Kelly inventoried the trunk. Under the carpet and inside the left wheel well, Officer Chasteen found a bag containing a white-yellow substance. The officers then drove the rental car to a nearby parking lot, where they met with a group of DEA agents who conducted a field test on the substance, which tested positive for cocaine.

Approximately eight weeks later, Hooker was arrested again, this time in Tennessee. Along with several co-conspirators, he was charged with conspiracy to distribute and to possess with intent to distribute five kilograms or more of

cocaine (count one), and forfeiture of real property (count two).  At the time of his arrest, Hooker waived his *Miranda* rights and made inculpatory statements to the arresting officers.  Hooker claims that they promised that he would be released on bond if he cooperated.  Allegedly as a result of this promise, Hooker answered questions about his involvement in a drug conspiracy in Dallas and Memphis and discussed his arrest in Grand Prairie, Texas.

Hooker filed motions to suppress the cocaine and post-arrest statements, which the district court denied.  Hooker then accepted a plea agreement, reserving the right to appeal the denial of his motions to suppress.  He filed a timely notice of appeal.

## II.  JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231, which gives the district courts jurisdiction over "all offenses against the laws of the United States."  We have jurisdiction under 28 U.S.C. § 1291.

When reviewing a ruling on matters raised in a motion to suppress, we review the district court's factual findings for clear error and its conclusions of law de novo.  *United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006).  Additionally, when reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government.  *Id.*  "Where a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses."  *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005).

## III.  DISCUSSION

A.      Motion To Suppress the Cocaine

On appeal, Hooker argues that the cocaine was inadmissible because the police officer who searched his car did not have probable cause, and the inventory of Hooker's rental car was an unlawful search because the officer did not conduct the inventory pursuant to the department's policy.  Although we conclude that Hooker waived his argument based on the collective knowledge doctrine by failing to raise it before the district court,[1] we will proceed to analyze his claim under a plain error standard for "good measure."  *See generally United States v. Scroggins*, 599 F.3d 433, 448 (5th Cir.), *cert. denied*, 131 S. Ct. 158 (2010) (stating that "a defendant who fails to make a timely suppression motion cannot raise that claim for the first time on appeal," but noting that "our cases identifying such waiver have often proceeded to evaluate the issues under a plain error standard for good measure").  We will only find plain error when: "(1) there was an error; (2) the error was clear and obvious; and (3) the error affected the defendant's substantial rights."  *United States v. Khanalizadeh*, 493

---

[1] In his reply brief to this court, Hooker argued for the first time that the district court erred in *sua sponte* addressing the collective knowledge doctrine, which he claims that neither party raised at the suppression hearing.  *See United States v. Darensbourg*, 236 F. App'x 991, 993 (5th Cir. 2007) (per curiam) (unpublished) ("In issuing such *sua sponte* rulings, however, district courts should ensure the parties have an opportunity to present their contentions and evidence, so that factual and legal questions are developed fully.").  He contends that because the district court raised the issue *sua sponte*, he was deprived of the opportunity to prepare and present evidence; therefore, he contends that he did not waive this issue.  We reject Hooker's argument because the government clearly alleged that the police officers had probable cause to search the trunk of Hooker's vehicle in both its response to the motion to suppress and at the suppression hearing.  The response brief, filed in the district court six weeks before the hearing, states:  "The officers also had probable cause to believe that Hooker's vehicle contained evidence of a crime, specifically a kilogram of cocaine."  It then recounted many of the same facts described here.  Thus, contrary to Hooker's assertion, the district court did not *sua sponte* raise this issue.

F.3d 479, 482 (5th Cir. 2007). "Plain errors are obvious, clear, or so conspicuous that the trial judge and prosecutor were derelict in countenancing [them], even absent the defendant's timely assistance in detecting [them]." *United States v. Puckett*, 505 F.3d 377, 384 (5th Cir. 2007), *aff'd*, 129 S. Ct. 1423 (2009) (internal quotation marks and citations omitted). Because we find that the district court did not plainly err in concluding that there was probable cause to search the car, we do not address Hooker's argument attacking the "inventory search" rationale.

Under the Fourth Amendment, warrantless searches are presumptively unreasonable. *Horton v. California*, 496 U.S. 128, 133 (1990). An exception to the warrant requirement exists when a police officer has probable cause to search an automobile for contraband. *See Almeida-Sanchez v. United States*, 413 U.S. 266, 269 (1973). Probable cause to search exists when a reasonably prudent person could believe, based on the facts and circumstances, that the vehicle contains contraband. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam))).

Additionally, "'probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest,' when there is 'some degree of communication between the two.'" *United States v. Kye Soo Lee*, 962 F.2d 430, 435 (5th Cir. 1992); *see also United States v. Nieto*, 510 F.2d 1118, 1120 (5th Cir. 1975). We have applied the collective knowledge doctrine to two types of cases: "(1) those where the arresting officer has no personal knowledge of *any* of the facts establishing probable cause, but simply carries out directions to arrest given by another officer who does have probable

No. 10-10358

cause . . .; and (2) those where the arresting officer has personal knowledge of facts which standing alone do not establish probable cause but, when added to information known by other officers involved in the investigation, tips the balance in favor of arrest . . . ." *United States v. Webster*, 750 F.2d 307, 323 (5th Cir. 1984) (internal citations omitted).[2]

For example, in *Nieto*, we held that where a tip passed from an informant who was known to be reliable through two police officers to the officer who performed the search, "[t]he collective knowledge of this closely coordinated team of drug agents can be attributed to the seizing officer on the scene . . . ." 510 F.2d at 1120. Similarly, in *Ibarra*, we concluded that where there was communication between the officer who had the facts giving rise to probable cause and the officer who performed the search, probable cause can be imputed to the searching officer under the collective knowledge doctrine. 493 F.3d at 531.

Neither the government nor the district court stated that the search was justified as a search incident to Hooker's arrest for the traffic violations.[3] Although the district court did not use the phrase "the collective knowledge

---

[2] Although *Webster* discusses probable cause to arrest rather than to search, we have applied the collective knowledge doctrine to cases analyzing whether the police had probable cause to search. *See Nieto*, 510 F.2d at 1120; *United States v. Ibarra*, 493 F.3d 526, 531 (5th Cir. 2007).

[3] Hooker relies on *Arizona v. Gant*, 129 S. Ct. 1710 (2009), in which the Supreme Court held that a search of a vehicle incident to an arrest violates the Fourth Amendment unless "the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of the arrest." *Id.* at 1723. We find *Gant* inapplicable to this case because the government does not contend that the police officers searched the car incident to Hooker's arrest; rather, they searched the car because they had probable cause to believe that it contained contraband. In the alternative, the government argues that the officers searched the car pursuant to a department policy directing the officers to inventory a vehicle's contents prior to impounding the vehicle.

No. 10-10358

doctrine," the judge found that "Officer Dyess'[s] testimony was sufficient, they could have searched [the car] right then.  I think he had sufficient probable cause based upon the conversations that he listened to and what he observed over the camera, what was said, and then things being placed in the trunk by Mr. Hooker at that point."

Hooker argues that the district court erred in admitting the evidence because there was no direct showing that the agents who belonged to the DEA surveillance team were the same DEA agents who told Officer Kelly to stop Hooker's car.  Hooker failed to raise this issue before the district court, and we conclude that, viewing the evidence in the light most favorable to the government, which we are required to do, *Charles*, 469 F.3d at 405, the district court did not plainly err in ruling on Hooker's motion to suppress the cocaine. The testimony at the suppression hearing shows that Officer Kelly met with DEA agents at a school and was instructed to conduct a traffic stop on Hooker's vehicle, a Chevrolet Impala with specific license plate number.  Officer Dyess testified that it was his goal to have Hooker stopped with what he understood to be a kilogram of cocaine in his car and that, based on the recorded calls between Hooker and Hernandez and his observations of the house, he had probable cause to believe that Hooker had a kilogram of cocaine in the trunk of his car.

Based on this evidence, the district court was not incorrect in assuming that there was "some degree of communication," *Kye Soo Lee*, 962 F.2d at 435, between the DEA agents with probable cause and the police officers who searched the vehicle.  The error, if there was one, of relying on the collective knowledge doctrine was simply not "obvious, clear, or so conspicuous that the trial judge and prosecutor were derelict in countenancing [it]." *Puckett*, 505 F.3d

8

at 384.  We therefore uphold the district court's ruling that the cocaine was admissible.

### B.    Motion To Suppress the Post-Arrest Statements

Hooker also argues that the district court erred in denying his motion to suppress the post-arrest statements that he made to the police.  Hooker claims that the police officers promised that he would be released on bond if he spoke to the officers and, therefore, his statements were coerced.  By contrast, Officer Price, an officer who was present at the time of arrest and questioning, testified that the officers read Hooker his rights when he was arrested and again when he arrived at the DEA office.  She also testified that the questioning officers, including herself, only told Hooker that they would "speak with the [Assistant U.S. Attorney] who's handling the case here in Texas and tell them [sic] that he fully cooperated.  We have no charge over bond.  We can't promise him a bond. . . .  That's the extent of it."  When asked on several occasions whether any officer promised Hooker that he would be released on bond, Officer Price answered that the officers never made such a promise.

In determining whether a confession is voluntary, we consider "whether, taking into consideration the 'totality of the circumstances,' the statement is the product of the accused's 'free and rational' choice."  *United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1347 (5th Cir. 1994) (quoting *Martinez v. Estelle*, 612 F.2d 173, 177 (5th Cir. 1980)).  A promise to convey cooperation to a court or prosecutor is insufficient to render a statement involuntary.  *United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir. 1996); *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978).  Similarly, the Supreme Court concluded that a non-threatening statement that cooperation is to the defendant's benefit does not

render a statement involuntary. *See Fare v. Michael C.*, 442 U.S. 707, 727 (1979).

This issue rests solely on a credibility determination between Hooker and the questioning officers. We have held that "[i]f the record supports more than one permissible interpretation of the facts, the reviewing court will accept the district's choice between them, absent clear error." *Santiago*, 410 F.3d at 197. Here, the district court chose to believe Officer Price, and Hooker presents no persuasive argument that the district court's credibility determination was clearly erroneous. We therefore hold that the district court did not err in admitting Hooker's post-arrest inculpatory statements.

## IV.  CONCLUSION

For the reasons set forth above, the district court's denial of Hooker's motions to suppress is correct, and the judgment of conviction is AFFIRMED.